STEIFEL & PFEIFER *et al. v.* ED. & ELLEN CLARK *et al.*

1. MARRIED WOMAN. *Power to dispose of separate property. Mortgage.*
Holmes Erwin sold the lot to Edward Clark, in trust for his wife,
Ellen, the deed providing that said Ellen should have the power of
disposing of said property by deed or will, as if she was a *feme sole.*
*Held,* that this power carried with it the power to mortgage. Same
principle decided in the 'unreported case of *Williams* v. *Whiteman,*
September term, 1875, at Jackson. This case distinguished from the
case of *Temple* v. *Head,* 4 Heis., 34, where the power conferred upon
the *feme covert* was to dispose of by last will and testament, or by deed
of gift.

2. PERSONS UNDER DISABILITY. *Guardian ad litem.* Ordinarily, an
idiot or lunatic should defend a suit by his committee; but if he has
no committee, another person will be appointed his guardian *ad litem*
to defend the suit.

FROM DAVIDSON.

Appeal from the Chancery Court. ————————, Ch.

W. F. COOPER, JOHN REID, JNO. LAWRENCE and
S. CHILDRESS for complainants.

BAXTER SMITH, JOHN A. CAMPBELL and JOHN L. FARE for defendants.

DEADERICK, C. J., delivered the opinion of the court.

The bill in this case was filed in the chancery court at Nashville by complainants, August 21, 1868, to foreclose certain mortgages made by Clark and wife on a lot in Nashville. Holmes Erwin had sold and conveyed the lot in May, 1864, to Edward Clark, in trust for his wife, Ellen, the deed providing that said Ellen should "have the power of disposing of said property by deed or will as if she were a *feme sole.*"

On the 21st February, 1865, Clark and wife conveyed to James Doyle eleven feet of said lot to secure $2,000, loaned by Doyle to them. On the 29th August, 1865, Clark and wife conveyed to complainant, Steifel, the whole of said lot, to secure $3,780, borrowed by them of said Steifel. On the 5th September, 1867, Clark and wife conveyed to D. F. Wilkin, in trust, fifty-three feet of the sixty-four feet, the whole width of said lot, to secure certain other debts due to Doyle, providing further, that if the $2,000 loaned upon the mortgage of the eleven feet should not be adequately secured thereby, any balance remaining unsatisfied should be paid from the fifty-three feet therein mortgaged.

These several debts thus secured by mortgage, it is alleged were contracted to enable the said Clark and wife to pay purchase money and for improvements erected upon the lot mortgaged. Clark and wife having failed to answer, a judgment *pro confesso* was

entered against them at April term, 1869, but at the same term it was set aside upon affidavit made, setting up that Mrs. Clark had become insane since the commencement of this suit. Baxter Smith, Esq., a solicitor of the court, was appointed her guardian and leave was given him to answer, which was subsequently done.

In the progress of the cause, Holmes Erwin, the vendor of the lot, filed his petition, setting up his vendor's lien, with a copy of his deed to Clark, as trustee for his wife, which retained a lien upon its face for a balance of unpaid purchase money, and a note upon which several payments had been made, leaving a balance of purchase money due him, November 17, 1871, of $2,228.54. The several mortgages mentioned were all duly registered, after privy examination of the wife of said Clark.

Mrs. Clark, it seems, had been placed in the lunatic asylum about the 1st of March, 1869, and still remains there. The chancellor rendered a decree in favor of Holmes Erwin, the vendor, for the balance of the purchase money found due upon the account taken by order of the court; and held that the deed from Erwin to the trustee did not confer upon Mrs. Clark the power to mortgage the lot conveyed, but that the creditors who had advanced money to Mrs. Clark, which had been expended in paying the purchase money or in making improvements upon the lot, might have a lien upon the lot, the former to the extent of the balance of the purchase money due, the latter to the extent that the money expended had

enhanced its value. From this decree both parties appealed, but the guardian *ad litem* and Edward Clark alone executed an appeal bond. The decree appealed from was final and such an one as either party might as matter of right have appealed from, and the appeal brought up the whole case to this court for revision.

It is argued that the defendant, Mrs. Clark, could not defend by guardian *ad litem,* and that her defense should have, been made by her committee or regular guardian, and that it was error to render any decree to her prejudice, unless she was thus represented. Ordinarily, an idiot or lunatic should defend a suit by his committee, but if he has no committee, another person will be appointed his guardian *ad litem* to defend the suit. Sto. Eq. Pl., sec. 70; Danl. Ch. Pl. and P., 483. It is also argued, earnestly, that at the time of the execution of the several mortgages, Mrs. Clark was incapable, by reason. of being of unsound mind, to bind herself by contract. Several witnesses testify to acts and conduct on her part in 1863 and 1864, that seem to have proceeded from a condition of temporary insanity. But this state of mind seemed to be paroxismal and of short duration, followed by complete restoration to reason. Other witnesses testify to her mental capacity long after 1864, and during the years in which the deeds of mortgage were executed, she conducted the business in which she and her husband were engaged, bought and sold their goods, negotiated and closed the purchase of the lot upon which she built, and raised the money by bor-

rowing with which the improvements made were paid for, and was esteemed as a woman of more than or-. dinary capacity in the management of her business, by those who had transactions with her. Of her capacity to execute the deeds of 1865–6, we have no doubt,. and we do not find in the record any sufficient evidence to authorize us to say that she had not capacity to understand and execute that of 1867. There is nothing to excite any suspicion of unfairness in any of the transactions. On the contrary, the debts secured seem to have been chiefly, if not wholly, for borrowed money, at six per cent. interest. But the defense mainly discussed and relied on is, that under the powers conferred by the deed by Erwin, Mrs. Clark could not give a valid mortgage on the lot, or convey it otherwise than by deed of bargain and sale, or by last will and testament. The language of the conveyance is, to Edward Clark as trustee, "for the sole and separate use of the said Ellen Clark, free from the debts and liabilities or control of her husband, the said Edward Clark; the said Ellen Clark to have the power of disposing of said property by deed or will, as if she were a *feme sole.*"

Numerous cases have been cited by counsel for and against the proposition that the power of disposition. by deed includes the power to mortgage. This direct question was decided in the unreported case of *Williams* v. *Whiteman,* at September term, 1875, of this court at Jackson. In that case, in an elaborate opinion by Judge Freeman, reviewing the decisions in Tennessee and other authorities, it was held "that a

power to dispose of, would necessarily carry with it the power to encumber or charge, as the greater includes the less, and on the same principle that a power to sell would give the power to mortgage or charge the same." See also 4 Kent's Com., 148.

Following this case, we hold that Mrs. Clark, under the powers conferred in the deed, had the power to mortgage the property conveyed. The case of *Temple* v. *Head*, 4 Heis., 34, is not in antagonism to this construction. In that case it was held, Judge Turney delivering the opinion, that the wife had no power to mortgage under the power conferred by the marriage contract, "to dispose of by last will and testament or by deed of gift." The execution of the power is limited to a particular mode, and in such case the prescribed mode must be pursued, and a negative of any other mode is implied. The kind of deed that could be made under the power to Mrs. Temple, was restricted to a deed of gift, and it was, therefore, held that a mortgage or deed of trust is not the manner or mode designated in the deed of settlement. In this case there is no such restrictive language limiting and defining the character of deed by which the conveyance may be made; and, as before stated, the comprehensive power of disposition by deed includes not only the power to sell absolutely, but also the power to mortgage, which is a conditional sale. It follows, therefore, that the chancellor's decree must be reversed, and that after satisfying the vendor's lien, the mortgagors will be entitled to satis-

State v. Sneed.

faction of their several claims, from the sale of the property in the order of their priority, after first retaining an amount sufficient to pay the costs.