LUEFT and wife, Respondents, vs. LUEFT, by guardian *ad litem,* Appellant.

*October 11—November 7, 1906.*

*Wills: Construction: Trustees: Power to sell and convey land: Authority to mortgage: Infants: Authorizing mortgage of future interests in land: Application of proceeds.*

1. Where power given by a will to sell and convey land is coupled with charges upon the estate and the executors are intrusted with its management to carry out and discharge such obligations, the extent of the power conferred (and whether it includes the power to mortgage the land) is to be ascertained from the intention of the testator as evinced by the will in the light of surrounding circumstances.

2. A will gave the residue of testator's estate, after a bequest of $20,000, to the executors in trust "to hold, manage, invest," etc., and "to lease, sell, deliver, transfer, grant, and convey the whole or any part thereof; to invest and reinvest the proceeds of sale, and generally to have, manage, and control" the estate as fully as the testator might do if living. The net income was to be used to maintain and care for his son W., and upon the death of W. without issue the trustees were to convey all real estate to testator's son P. for life, with remainder to his lawful issue. The income of the real estate so held in trust was sufficient only to pay taxes, insurance, and repairs, but the trustees, with moneys obtained by mortgaging the land, improved it so that it yielded a net income for the care and maintenance of the son W. *Held,* that the giving of such mortgage was within the powers conferred by the will.

3. After the death of W. without issue, there being no available means for payment of the mortgage, it was proper for the court, under ch. 300, Laws of 1899, in order to protect the interest of an infant daughter of the son P., to authorize another mortgage to pay off the first.

4. It was proper also in such case for the court, in order to protect the infant's interest, to direct payment of delinquent taxes on the land out of the money raised by the second mortgage, notwithstanding the duty of the life tenant to pay such taxes.

5. The fact that executors had exceeded their trust in applying more than the net income to the support of W. was not material in the proceeding to authorize the giving of the second mortgage.

APPEAL from an order of the circuit court for Milwaukee county: WARREN D. TARRANT, Circuit Judge. *Affirmed.*

This is an appeal from an order of the circuit court authorizing a referee to mortgage lands in which a minor has an interest under a will. On February 17, 1895, Phillip Lueft, a resident of Milwaukee, died testate. His will was admitted to probate April 5, 1895. The executors named in the will duly qualified and letters testamentary issued to them, and they continued to act as executors and trustees during the continuance of the trust under the will. The will of Phillip Lueft, deceased, gave $20,000 out of his personal estate to his son *Phillip Lueft, Jr.,* and then provided as follows:

"All the rest and residue of my estate, real or personal, and wherever situate at the time of my death, I give, devise, and bequeath to my said executors, in trust, however, for the following purposes, to wit: to hold, manage, invest, and reinvest the same, collect the rents, profits, and income arising therefrom; to make all necessary repairs, and pay the taxes, assessments, and insurance thereon; to lease, sell, deliver, transfer, grant, and convey the whole or any part thereof; to invest and reinvest the proceeds of sale, and generally to have, manage, and control my said estate as fully as I might, if living, do myself; all subject, however, to the provisions, conditions, limitations, and restrictions hereinafter contained.

"(A) I direct that during the continuance of this trust my said executors and trustees shall use the net income arising from the estate hereby devised and bequeathed to them as aforesaid, or so much of said income as may be necessary therefor, for the purpose of properly caring for and maintaining my son William Lueft, and his family, if any; it being my intention that my said son shall, in so far as said net income shall suffice, be maintained in the manner we have heretofore lived, and receive all necessary care, assistance, and comforts.

"(B) All personal property herein bequeathed to my said executors and trustees shall be invested, kept invested, and reinvested by my said executors and trustees in good interest-

bearing securities, secured by first mortgage on real estate situate in the city of Milwaukee, county of Milwaukee, and state of Wisconsin.

"(C) In case my said executors and trustees shall sell any of the real estate hereinbefore devised to them, I direct that the proceeds of such sale or sales shall be invested, kept invested, and reinvested by my said executors and trustees in good interest-bearing securities secured by first mortgage on real estate situate in the said city of Milwaukee; for the purposes of this will the proceeds of such sales shall be deemed real estate and shall be disposed of by my executors and trustees in the manner hereinafter provided for the disposal of my real estate.

"(D) This trust shall terminate on the death of my said son William Lueft. In the event that on the termination of this trust my said son William Lueft shall leave him surviving lawful issue, I will and direct that my said trustees shall convey and pay over all the estate then in their hands to such lawful issue forever."

The will provided further that if this son, William Lueft, should leave no lawful issue, then the executors were to convey and dispose of the estate in their hands as follows: (a) To transfer to his son *Phillip Lueft, Jr.,* all personalty in hand absolutely, and to convey to him all real estate for life with remainder in fee to his lawful issue surviving him, and if he should die leaving no lawful issue then to testator's legal heirs; (b) if the son *Phillip Lueft, Jr.,* should not then be living, to transfer the property to his lawful heirs; and (c) if he should leave no lawful issue then they were to transfer the estate in their hands to testator's legal heirs. At the time of testator's death his son William was insane, and had been in an asylum for the insane for some seven or eight years. He died September 7, 1901, unmarried, and leaving no issue. The son *Phillip* is married, and at the time of William's death had, and still has, one child, a daughter, *Flora Annie,* who is a minor. She appears by guardian and prosecutes this appeal.

Testator's estate at the time of his death consisted of personal property amounting to $26,474, and two pieces of real estate—one piece situated on Twelfth street, appraised at $8,500, and another situated on Wells street, appraised at $5,000. The Twelfth-street property consisted of a lot and a half, upon which was located an old brick structure. About five years after testator's death the executors, by moving the old structure to the rear of the lot and by constructing a new flat building on it, made improvements on the Twelfth-street property at a cost of about $36,000, which was paid by applying the legacy to *Phillip Lueft, Jr.,* amounting to $20,000, by using $1,000 of cash on hand belonging to the residue of the estate, and by applying $15,000 raised by a loan on September 18, 1901, by the executors and trustees under the will, payment thereof being secured by a mortgage on the real estate so improved. They also expended $1,500 in improvements on the Wells-street property, putting it in proper condition for letting. This action of the executors is alleged to have been taken under the powers of the will, and for the purpose of increasing the income, which was insufficient to pay taxes, assessments, necessary repairs, expenses for the maintenance of the property, and the support, as directed by the will, of the son William.

On March 30, 1903, *Phillip Lueft, Jr.,* and his wife, under ch. 300, Laws of 1899, petitioned the circuit court to authorize a mortgage of $18,000 on this real estate, the avails of such mortgage to be applied in payment of the $15,000 mortgage given by the executors and trustees and interest due thereon, and to pay the unpaid taxes on the real estate for the years 1900, 1901, and 1902. Notice of such application was given to appellant and her guardian *ad litem.*

The petition set forth substantially the foregoing facts, and further alleged that the executors, as directed by the will, had supported the son William in an asylum for the insane until the time of his death; that the income from the real es-

tate as so improved was insufficient to so maintain him and
pay the expense of administration, the debts, taxes, assess-
ments, and improvements on the real estate; that there was no
money of the estate on hand to pay the mortgage when due,
and that there were taxes unpaid on the estate for the years
1900, 1901, and 1902; that a mortgage loan of $18,000 on
the property would well promote the interests of the daugh-
ter, *Flora Annie,* prevent the probable foreclosure of the
mortgage, pay the former loan of $15,000 with interest, and
by redemption of the outstanding tax certificates prevent the
issuance of tax deeds on the premises.

The court, after a hearing and a reference respecting the
application, made an order, based on this petition, in which
it found

"that the interests of said *Flora Annie Lueft,* and of any
after-born children of said *Phillip Lueft, Jr.,* who will also
own and become interested in said real estate under and by
said last will and testament of said Phillip Lueft, deceased,
require and will be substantially promoted by the mortgaging
of the real estate mentioned in said petition and hereinafter
described for the sum of eighteen thousand ($18,000) · dol-
lars, for the reasons set forth in said petition,"

authorized the execution of a mortgage, and directed the ap-
plication of the money so borrowed in discharge of the for-
mer mortgage and interest due on it and the payment of un-
paid taxes.    From such order *Flora Annie Lueft,* by her
guardian *ad litem,* appeals.

For the appellant there was a brief by *F. H. Bottum,* guard-
ian *ad litem,* and *Ryan, Ogden & Bottum,* of counsel, and
oral argument by *L. M. Ogden.*    To the point that the exec-
utors had no power to mortgage the land they cited *First Nat.
Bank v. Nat. Broadway Bank,* 156 N. Y. 459; *Potter v.
Hodgman,* 81 App. Div. 233; *Willis v. Smith,* 66 Tex. 31;
*Patapsco G. Co. v. Morrison,* 2 Woods, 395; *Greene v.
Greene,* 19 R. I. 619; *Hannah v. Carnahan,* 65 Mich. 601;
*Rutherford L. & I. Co. v. Sanntrock,* 44 Atl. 938 (see 60

N. J. Eq. 471) ; *Wilson v. Maryland L. Ins. Co.* 60 Md. 150 ; *Rountree v. Denson,* 59 Wis. 522.

For the respondents there was a brief by *Austin, Fehr & Gehrz,* representing the mortgagee and his assignee, and of counsel with *Emil Wallber,* attorney for petitioners; and oral argument by *G. A. Gehrz.* They argued, among other things, that the language of the will should be construed as giving the executors and trustees power to improve the real estate and mortgage the same to enable them to complete and pay for such improvements. *Lardner v. Williams,* 98 Wis. 514; *Hannah v. Carnahan,* 65 Mich. 601; *Price v. Court-ney,* 87 Mo. 387 ; *Kent v. Morrison,* 153 Mass. 137 ; *Zane v. Kennedy,* 73 Pa. St. 182; *Leggett v. Firth,* 53 Hun, 152, 156; *Steifel v. Clark,* 9 Baxt. 466, 470, 471; 4 Kent, Comm. 147 ; *Mills v. Banks,* 3 P. Wms. 1, 9 ; *Jackson v. Everett,* 3 Shannon (Tenn.) 811, 58 S. W. 340; *Williams v. Wood-ard,* 2 Wend. 487, 492; 11 Am. & Eng. Ency. of Law (2d ed.) 1060, 1061; 22 Am. & Eng. Ency. of Law (2d ed.) 1156; *Loebenthal v. Raleigh,* 36 N. J. Eq. 169, 173.

SIEBECKER, J. Under the provisions of the will it is un-questioned that the executors took the residue of the estate for the purpose of applying the net income thereof, if neces-sary, to the care and maintenance, during his life, of testa-tor's son William, and of his family, if he had any. In their administration of the trust, for the purposes and in the man-ner set out in the statement of facts, they mortgaged the real estate for $15,000 to pay in part for the improvements made on it. The inquiry is whether the executors had power so to mortgage the real estate under the powers conferred by the will. The chief difficulty arises in determining whether the power to make disposition of the real estate, given in the will, included the power to mortgage it for the purposes of administering the trust with respect to the care and main-tenance of the son William. The decisions on the subject of

the right of trustees to mortgage real estate under a simple power of sale are not harmonious. *Lardner v. Williams,* 98 Wis. 514, 74 N. W. 346. The weight of authority seems to be that a mere power to sell, such as that of a power of attorney to sell real estate, confers no power to mortgage. 1 Jones, Mortg. § 129, and cases cited; 2 Washburn, Real Prop. § 1690, and note. But when such powers, coupled with charges upon the estate, are conferred by wills or other instruments, and the executors are intrusted with its management to carry out and discharge such obligations, no such limitation is implied. Under such circumstances the extent of the power conferred by such words as "to sell," "convey," and their equivalents is to be ascertained from the intention of the donor of the power in the light of the purposes and objects of the trust as expressed in the grant.

In the construction of powers conferred for such objects we again find the decisions upon the subject irreconcilable. Some of the courts have adopted the strict construction, and hold that no power to mortgage is implied by the language granting power to sell, convey, and dispose of the real estate, for the reason that such terms negative an intent of the donor to authorize mortgaging the estate. Of this class are the following cases: *Bloomer v. Waldron,* 3 Hill, 361; *Potter v. Hodgman,* 81 App. Div. 233; *Price v. Courtney,* 87 Mo. 387; *Parkhurst v. Trumbull,* 130 Mich. 408, 90 N. W. 25; *Greene v. Greene,* 19 R. I. 619, 35 Atl. 1042. Other courts adopt a liberal interpretation of such terms when employed in granting such powers, and have construed them as expressly including the authority to mortgage. This rule is followed in Pennsylvania and other jurisdictions. *Zane v. Kennedy,* 73 Pa. St. 182; *McCreary v. Bomberger,* 151 Pa. St. 323, 24 Atl. 1066; *Jackson v. Everett,* 3 Tenn. Cas. 811; *Steifel v. Clark,* 9 Baxt. 466; *Rutherford L. & I. Co. v. Sanntrock,* 60 N. J. Eq. 471, 46 Atl. 648; *Mills v. Banks,* 3 P. Wms. 1; *Ball v. Harris,* 4 Myl. & C. 264; 4 Kent, Comm. 345.

Lueft v. Lueft, 129 Wis. 534:

This court in the case of *Lardner v. Williams,* 98 Wis.. 514, treating of the question here involved, adopted the rule followed in many jurisdictions of looking into the instrument creating the trust and of giving effect to the manifest intent of the donor as shown by the light of the surrounding circumstances. The principle of this rule is that if the purpose of the trust can be answered and best accomplished by mortgaging the estate, and if this is not in violation of the intention of the donor, then this method of administration is proper and within the grant of the power. Such construction was. followed in *Starr v. Moulton,* 97 Ill. 525; *Faulk v. Dashiell,* 62 Tex. 642; *Loebenthal v. Raleigh,* 36 N. J. Eq. 169; *Waterman v. Baldwin,* 68 Iowa, 255, 26 N. W. 435; *Kent v. Morrison,* 153 Mass. 137, 26 N. E. 427. See, also, 4 Kent, Comm. 345, and cases cited; 1 Perry, Trusts (5th ed.) § 768.

The will clearly declares the object of the trust conferred on the executors. They were to employ the residue of the estate transferred to them so that his son William should be cared for and maintained in the manner in which he had theretofore received "all necessary care, assistance, and comforts," and the cost thereof was to be defrayed out of the net income of the estate. To accomplish this purpose the executors were vested with the residue of the estate, after a bequest of $20,000 out of the personal estate to his son *Phillip,*

"to hold, manage, invest, and reinvest the same, collect the rents, profits, and income arising therefrom; to make all necessary repairs, and pay the taxes, assessments, and insurance thereon; to lease, sell, deliver, transfer, grant, and convey the whole or any part thereof; to invest and reinvest the proceeds. of sale, and generally to have, manage, and control my said. estate as fully as I might, if living, do myself."

In its terms and phraseology this language is significant,. showing that the testator intended to confer on the executors all necessary authority under the power to manage the property throughout William's life so as to provide for him as the testator had done in his lifetime. It is evident that he in-

tended to invest them with broad and discretionary powers in the control and management of the property and in the conduct of William's affairs for his benefit. The terminology necessarily implies that the executors were tô handle the property in such ways as they found best under the circumstances to meet the charge imposed by the will. The terms of the will and the directions it imposed negative the idea that the executors were to be limited to an absolute sale of the real estate and to reinvesting the proceeds in interest-bearing securities. Testator manifestly contemplated that they should secure the largest possible income from the estate. The accomplishment of such an object implies that they were vested with a discretion to adopt such management as they, in their judgment, found would best attain the desired result. No portion of the will indicates an intention to restrict this authority by limiting the management and the disposition of the property to any specific method.

We should look to all parts of the will to ascertain the testator's intention. Taking this view of the will, we think the language, "generally to have, manage, and control my said estate as fully as I might, if living, do myself," is an expression of testator's intention to confer broad and comprehensive powers for the purposes of this trust, and that such language should be construed as having a significance inclusive of every meaning in which the words may be used, instead of a restricted one. It appears that the real estate held in trust yielded no income above the necessary expenses of repairs, taxes, and insurance. After it was improved, as shown, it yielded a net income sufficient to furnish the son William the care and maintenance directed and the executors were thus enabled to accomplish the purposes of the trust. In the light of these facts it seems obvious that the provisions of the will were complied with by the executors in making the improvements and that their administration was in harmony with testator's intention that the powers granted them should

be co-extensive with the purposes of the trust, and included those required to carry out the improvements of the real estate, and for this purpose they had authority to execute the mortgage for $15,000. This mortgage being valid, and there being no means of payment available, it seems obvious that the only way to protect the infant's interest and to prevent a sale of the premises in satisfaction of this mortgage is to authorize another loan to secure money to pay it. Such a course is promotive, within the contemplation of ch. 300, Laws of 1899, of her interests in the property.

It is suggested that the court erred in directing that the delinquent taxes be paid out of the money so to be raised in this proceeding, because the law imposes the duty of paying them on the life tenant. Notwithstanding such duty of the life tenant, the court may very properly direct redemption from a sale for delinquent taxes to prevent the issuance of tax deeds, thereby protecting the infant's estate. A delay of redemption until payment could be enforced against the life tenant might seriously imperil the infant's interests.

It is urged that the executors exceeded their trust in applying more than the net income to William's support. Whether or not there is a basis for such a claim is immaterial in this proceeding. The executors had power under the will to make the $15,000 mortgage, and it was proper for the court to order a new loan to provide for its payment to protect the infant's estate from loss as threatened if it were not paid.

We discover no error in the record, and find that the order of the circuit court was well founded.

*By the Court.*—The order appealed from is affirmed.

CASSODAY, C. J., dissents.