## T. P. WEAKLEY *v.* JOHN S. BARROW *et al.*

### (*Nashville.* December Term, 1916.)

1. **TRUSTS. Management. Control by courts. Intent of grantor.**
The creator of a trust can preserve his specific realty as such after death so long as the rule against perpetuities is not violated, and the courts ordinarily must hold his will as supreme; but, where the language in the instrument creating the trust leaves leeway as to the intention of the trustor, equity may in certain circumstances impute to him an intent to change the mode of management designated by him. (*Post, pp.* 227, 228.)

Cases cited and distinguished: Patton v. Patrick, 123 Wis., 218; Bennett v. Nashville Trust Co., 127 Tenn., 126.

2. **TRUSTS. Management. Control by courts. Preservation of Estate.**
The power of a court of equity to sell trust property to preserve the trust from destruction or to prevent a frustration of the trustor's scheme is broader than its power to sell merely for the benefit of the beneficiaries. (*Post, p.* 228.)

3. **TRUSTS. Sale of property. Power of court. Preservation of estate.**
Courts of chancery, under their inherent jurisdiction to administer and protect trust estates, can sell trust property notwithstanding a restriction on sale, where an exigency arising from unforeseen circumstances requires the sale to preserve the property to answer the primary purposes of the trust. (*Post, pp.* 228-230.)

Cases cited and approved: Johns v. Montgomery, 265 Ill., 21; Curtiss v. Brown, 29 Ill., 201; Lenow v. Arrington, 111 Tenn., 720; Ricardi v. Gaboury, 115 Tenn., 484; Jones v. Habersham, 107 U. S., 174.

4. **TRUSTS. Sale of proprty. Power of court. Interests of different beneficiaries.**
Courts of equity cannot by ordering the sale of trust property subject the interest or estate, even by way of contingent remainder,

Weakley v. Barrow.

of one person to the benefit of another, unless the trust discloses a clear purpose that it may be done. (*Post, pp.* 230-234.)

Cases cited and approved: Greenwell v. Greenwell, 5 Ves. Jr., 194; Ruggles v. Tyson, 104 Wis., 500; Pitts v. Rhode Island, etc., Co., 21 R. I., 544; Miles v. Wister, 5 Bin. (Pa.), 477; Mills v. Michigan Trust Co., 124 Mich., 244.

Cases cited and distinguished: Errat v. Barlow, 14 Ves. Jr., 202; Ex parte Keeble, 11 Ves. Jr., 604; In re Application of Upham, 152 Wis., 275.

5. **TRUSTS.** Sale of property. Power of court. Unimproved property.

Where an owner of land, much of which was unimproved, conveyed it in trust for his wife for life and after her death to their children in fee, stating his purpose to be to provide for the maintenance of his wife and children, and prohibited the sale of any of the property unless he joined therein, and after the grantor's death it appeared that the ordinary maintenance expenses and special assessments against the property practically exhausted the income from the improved portions, the chancery court could decree the sale of a portion of the unimproved property for the purpose of improving the balance and thereby produce a sufficient income to support the widow and those dependent on her in the manner in which they had been accustomed, but could not direct the sale for the purpose of applying any of the proceeds thereof directly to the support of the widow (*Post, pp.* 234, 235.)

Case cited and approved: Lenow v. Arrington, 111 Tenn., 736

6. **TRUSTS.** Sale of property. Power of court. Preservation of property. Special assessments.

Where taxes and special assessments against unimproved trust property threaten to destroy the trust not only as to the life beneficiary but as to the remaindermen, the court of chancery can direct the sale of so much thereof as is necessary to preserve the property for the beneficiaries. (*Post, pp.* 235-237.)

Case cited and distinguished: Burroughs v. Gaither, 66 Md., 171.

137 Tenn.—15

7. **TRUSTS. Sale of property. Intention of grantor.**

Where the creator of a trust stated his purpose to be to secure his wife and children a proper support, but prohibited the sale of the trust property without his consent, the purpose to provide support cannot be allowed to override the intention to restrict the sale. (*Post, pp.* 237, 238.)

8. **TRUSTS. Sale. Application of proceeds. Duty of purchaser.**

A purchaser of trust property sold under decree of a court of chancery is under no obligation to see to the proper application of the proceeds of the sale. (*Post, p.* 238.)

Cases cited and approved: Jackson' v. Everett, 3 Tenn. Cas., 811; Bruce v. Goodbar, 104 Tenn., 638.

FROM DAVIDSON.

Appeal from the Chancery Court of Davidson County to the Court of Civil Appeals, and by *certiorari* to the Court of Civil Appeals from the Supreme Court.—JOHN ALLISON, Chancellor.

M. P. O'CONNOR and JNO. B. KEEBLE, for plaintiff.

R. S. WEST, for defendants.

MR. JUSTICE WILLIAMS delivered the opinion of the Court.

The question for decision in this case is whether a deed tendered to Mrs. Nannie F. Spotswood to a parcel of land sold to her, in a proceeding conducted in the chancery court in the above cause to that end, will vest in her a good and valid title.

The deed purports to convey a parcel out of a trust estate. The real estate composing that estate lies in the city of Nashville and is of value about $75,000, so that the principles to be declared and the decision to be reached in regard to the immediate transaction may have a far-reaching effect on the rights of the *cestuis que trust*.

The trust was created by John Shelby Barrow, by a deed executed in 1878; the grantor at the time, it seems, being absent much of the time in Mexico. The property was at that date unimproved or vacant, for the most part; and even at this time a considerable proportion is vacant property.

The consideration set forth in the deed is love and affection, and that the conveyance was "with a view to securing to my said wife and our children a proper and sure support."

The deed further reads:

"To have and to hold all of said lots or parcels of ground to the said Lucy Bell Barrow as her sole and separate property . . . for the term of her natural life, and then at her decease to such children of the said Lucy Bell Barrow, by me begotten as shall then be living, in fee, to be equally divided between said children, and said children shall take to the exclusion of curtesy of myself, or any future husband, the issue of any such child that may have died during the life of my said wife, to take just as the parent would have taken, and if there be no such child or children, nor the issue of such, then living, then

in that event the property herein conveyed shall revert to me, or in case neither I nor any such 'child, nor the issue of such shall survive my said wife, then to the right heirs of my great-grandfather, Dr. John Shelby. But the said Lucy Bell Barrow shall have the power to sell and convey with my concurrence. but not otherwise, such part or parts of said property as she may think advisable, with a view to improving the rest, and the proceeds of any of said property so sold by her shall be so applied. Nevertheless she shall, I joining with her in the deed, give any purchaser an absolute title in fee, which shall in no wise depend, for its validity, on the application made of the purchase money. And if the said Lucy Bell Barrow shall survive me, then and in that event the power given to the said Lucy Bell Barrow herein to sell and convey said property, shall cease, and she shall no longer have the right or power to sell and convey, and the *corpus* of said property, such as it shall be at my death, shall remain unimpaired during the life of the said Lucy Bell Barrow, she being entitled to the revenue from said property only, during her life.''

In August, 1880, the donor, being in Mexico, executed a power of attorney to H. L. Claiborne, which recites, in part, as follows:

''And whereas the time has come when it is wise for the protection of the property conveyed in said deeds and for its judicious improvements and the application of the proceeds to the uses and purposes

expressed in said deeds of gift that a trustee should be appointed to take charge of and manage said property with the power of sale for the purposes of improvements.

"Now, therefore, I, etc., constitute H. L. Claiborne my true and lawful attorney in fact for me and in my name to execute jointly with my wife any deed of trust nominating any trustee whom she may select and vesting him with full powers of sale and control over said property for the purpose of supporting my said wife and children and improving the property to her by me conveyed. But nothing in this deed shall be taken to change the estate as conveyed under said deeds to my said wife, her children by me begotten, to myself, and to the right heirs of Dr. John Shelby, which estate shall operate upon whatever property may be undisposed of at the death of my said wife."

A trustee has been appointed under this power of attorney, and he negotiated the sale to Mrs. Spotswood, above referred to, and reported it to the chancery court for confirmation.

The chancellor referred the trustee's petition to the master for proof and a report in the premises, and that report shows the gross annual income from the estate to have been $3,467.85, but that the net income after the payment of taxes, insurance, repairs, etc., was only $192; that the life tenant, Lucy Bell Barrow, the trustor's widow, required not less than $3,000 a year for the maintenance of herself and those dependent upon her; and the master indicated

the view that this income might be produced by selling portions of the unimproved property and using the proceeds in placing improvements on the retained or unsold portion of the estate, thus stopping the payment of taxes on some of the parcels that were producing no income, and increasing the rent-producing power of the balance. City improvements create a burden on the estate for which there is no presently compensating future so long as the realty is withheld from market and unimproved.

The chancellor passed a decree ratifying this sale, and sales of vacant parcels generally were authorized; the proceeds to be used, however, in the support of the widow and those dependent on her. It was decreed that Mrs. Spotswood should accept the deed tendered her.

An appeal was prayed to the court of civil appeals, and that court affirmed the chancellor's decree, saying that, "if it becomes necessary to encroach upon and utilize the whole *corpus* of the estate to accomplish the end" of such maintenance, that was warranted.

The cause is before this court on a petition for *certiorari*, in which errors are assigned raising the questions below discussed. On account of the importance of the case, we ordered and have heard oral arguments.

The power of a court of equity to sell any part of the trust realty during the life of the life tenant is denied by appellant, and the deed declaring the trust is pointed to as specifically stipulating that sales shall not be made.

The right of an owner of an estate to control, not merely its direction in transmission, but also its use and management (subject to certain limitations imposed by law), are all but sacred in the law's regard. A testator or a creator of a trust by deed is given the right of preserving specific realty as such, after death, so long as the limitation as to the creation of perpetuities is not violated, and the courts ordinarily must hold his will as supreme.

"He may think that thereby is assured either a more certain or a larger income than could be obtained by its sale and the investment of the proceeds, or he may believe that the increase in sale value during that term will be for the best interest of those for whom he desires to provide." *Patton* v. *Patrick,* 123 Wis., 218, 221, 101 N. W., 408.

Where, however, leeway is left by the language used, in the instrument creating such a trust, in relation to the intention of the trustor, a court of equity may in certain circumstances impute to the deceased creator of the trust an intent to change a mode of management designated by him. As was said in *Bennett* v. *Nashville Trust Co..* 127 Tenn., 126, 153 S. W., 840, 46 L. R. A. (N. S.), 43, Ann. Cas., 1914A, 1045, which was a closely analogous case, involving the power of a court of equity to hasten the enjoyment of a trust fund:

"A court of equity, acting in *loco parentis* or occupying the place of the trust creator, in such case, does what it conceives would have been done by the

creator had he foreseen the situation of his benefi-
ciary in the substitution of another course of manage-
ment in order to the completer realization of his pur-
posed bounty. . . .

"As we conceive the true rule to be, indicated
above, the court will only so direct a use of such in-
come in behalf of a beneficiary where an exigency,
not existent at the creation of the trust, has arisen,
which exigency is one not then anticipated by the tes-
tator; for, if the testator saw or foresaw the plight
of his beneficiary, and yet intended that his gift
should be withheld until she matured in age, we would
deem it to be beyond the power of the court to alter
a purpose thus declared."

In considering what would have been the proper
decree in the court below, and what shall be the de-
cree in this court, under the doctrine of imputed
change of intention, the distinction must be kept con-
stantly in mind between (a) the power of a court of
equity to sell trust realty merely for the benefit of
the *cestuis que trust* in their maintenance, and (b) the
power to sell in order to preserve the trust from de-
struction or to prevent a frustration of the trustor's
scheme, as such. The reach of the court's power is
more limited or restricted in the first instance than
in the second, particularly when it comes to dealing
with the interests of a contingent remainderman.
Herein:

(a) Courts of chancery under their inherent juris-
diction to administer and protect trust estates, and

to direct the conversion of realty into personalty, and *vice versa,* have the power to modify the terms as to management of a trust imposed by the settlor, under this doctrine; that is, when, by reason of some exigency arising from unforseen and unanticipated circumstances, the property held in trust will fail to answer the primary purposes of the trust, if the court's power is not brought into exercise. The exercise of the power depends, not on expediency, but on exigency. When considerations of necessity, which rise to the dignity of an exigency or emergency, make their appeal to a court of equity, its power to modify the terms of the trust and bring to sale property withheld from sale in terms (at least where the trust is created by deed) is exercised, not to defeat the trust, but in furtherance of the trustor's purposes towards his beneficiaries, by affording relief from after-arising conditions that would defeat his purposed bounty. The court, even then, proceeds with great caution, and should hold as nearly as may be to the mode of management set forth by the trust-creator. *Johns* v. *Montgomery,* 265 Ill., 21, 106 N. E., 497, L. R. A., 1916B, 1073, Ann. Cas., 1916A, 996, following *Curtiss* v. *Brown,* 29 Ill., 201; *Lenow* v. *Arrington,* 111 Tenn., 720, 69 S. W., 314; *Ricardi* v. *Gaboury,* 115 Tenn., 484, 492, 89 S. W., 98; *Jones* v. *Habersham,* 107 U. S., 174, 183, 2 Sup. Ct.. 336, 27 L. Ed., 401.

Some of the reasons which may properly impel the exercise of this jurisdiction were forcibly stated in *Curtiss* v. *Brown,* supra:

"The case might exist where the property was unproductive, as in this case, but where the *cestui que trust* was absolutely perishing from want or forced to poorhouse, or where the trustee could not possibly raise the means to pay the taxes upon the property and thus save it from a public sale and a total loss. Can it be said that the beneficiary of an estate which would bring in the market $100,000 should perish in the street from want, or be sent to the poorhouse for support, or that the estate should be totally lost, because there is no power in the courts to relieve against the provisions of the instrument creating this trust? Exigencies often arise not contemplated by the party creating the trust, and which, had they been anticipated, would undoubtedly have been provided for, where the aid of the court of chancery must be invoked to grant relief imperatively required; and in such cases the court must, as far as may be, occupy the place of the party creating the trust, and do with the fund what he would have dictated had he anticipated the emergency."

This doctrine is subject to a limitation, quite as firmly established. The interest or estate (even by way of a contingent remainder) of one person may not be subjected to a sale and the proceeds used for the support or maintenance of another, unless the terms of the trust disclose a very clear purpose that this may be done. This limitation was in mind, and referred to in this language in *Bennett* v. *Nashville Trust Co.*, supra:

"It is to be noted that what is asked in complainant's behalf will not, on grant, affect the rights of any other legatee or beneficiary under the will. The *quantum* of her estate as *cestui que trust* is not to be enlarged."

What is sought in the pending case is to sell realty, in bar of the rights of remaindermen *in esse,* the proceeds to be used in the support of Mrs. Barrow, the life tenant, and those dependent upon her, and in the payment of taxes. Can this be done, the contingent remaindermen not consenting?

Cases that involve maintenance allowances where there appear directions for the accumulation of income during minority, with a gift over in case none attains full age, furnish a close analogy. Lord Chancellor LOUGHBOROUGH, in *Greenwell* v. *Greenwell,* 5 Ves. Jr., 194, passed an order for an allowance in such a case, observing, however, that he feared it would be his will and not the testator's.

Lord ELDON, dealing with an effort to break in on a directed accumulation, in *Errat* v. *Barlow,* 14 Ves. Jr., 202, said, in disapproval of that ruling:

"If the chance of surviving is equal among all (speaking of several children), and no other interest that upon any other contingency would take effect will be defeated, maintenance shall be allowed out of the interest; but it is impossible to give it, where in any event under the operation and construction of the will that interest may possibly belong to other persons."

In *Ex parte Kebble,* 11 Ves. Jr., 604, Lord ELDON said:

"The cases in which maintenance has been allowed, though not given by will, is where there are children some of whom must take the property and all have an equal chance by surviving and a present interest, but cannot be done if there is a gift over; or if the children are not all the persons among whom it is to go."

The modern cases follow the view taken by Lord ELDON, rather than the ruling of his predecessor on the woolsack, and apply the doctrine in cases that concern contingent remainder estates in realty.

After referring to the above-cited English cases, the supreme court of Wisconsin, in *Ruggles* v. *Tyson,* 104 Wis., 500, 520, 81 N. W., 367, 370, 48 L. R. A., 809, 816, said on this point:

"The foregoing is the settled law as far back as we find adjudicated cases on the subject. They are in accordance with reason and common sense. Any other doctrine would sanction confiscation and render it impossible to settle an estate upon any plan that would, in any reasonable probability, be carried out according to the scheme of the settlor. A failure to keep in mind the distinction between taking the property of an infant and expending it for his benefit, and taking property to which such infant has a mere naked legal title, which may go over in possession and enjoyment to some other person, is what has led to most of the difficulties in this case. . . .

"When the danger of loss to the estate shall have been securely fortified against, there is no reason why the equivalent of any of the property that shall have been sold, and the unsold lands, should not be used so as to provide for the respondent and her children so far as such provision may be consistent with a certain preservation of the property for the ultimate takers upon the expiration of the particular estate. Whatever the necessities of the parties may be, the court cannot break in upon the estate in remainder to relieve them, and cannot sever the life estate from the residue of the title unless it appears that there is no other practical way to administer the property under the circumstances."

See, also, *Pitts* v. *Rhode Island, etc., Co.,* 21 R. I., 544, 45 Atl., 553, 48 L. R. A., 783, 79 Am. St. Rep., 821; *Miles* v. *Wister,* 5 Bin. (Pa.), 477; *Mills* v. *Michigan Trust Co.,* 124 Mich., 244, 82 N. W., 1046.

The result of the adjudicated cases is thus summarized in the last edition of Perry on Trusts:

"Where the gift comes from parent, or persons in the place of parents, whose duty it is to support the children, maintenance will be ordered where the subject of the trust is residuary personal estate, or a contingent interest only, although there was no power in the will, and there was an express direction for an accumulation, and although there was a gift over to other children, if the chance of survivorship is equal. If the chance of survivorship is not equal, maintenance will not be allowed; nor will it, if the

interest is real estate and contingent or residuary. But maintenance will be refused out of a contingent interest, or where the fund is given over; or where the gift proceeds from a stranger, or from a grandfather.'' 2 Perry on Trusts, section 616, and see section 619.

The Wisconsin court in a later case (*In re Application of Upham*, 152 Wis., 275, 140 N. W., 5, 48 L. R.. A. [N. S.], 1004, Ann. Cas., 1914C. 376), speaking first of the general rule and then of the exception, said:

''The rule on the subject is a very important one, but the overshadowing necessity requisite to give it activity and the limitations of it to necessities, and the essential that, in case of a change, it shall be into an equivalent without changing the real beneficial character of the final destiny of the subject of the trust, must be kept significantly in view. Without the rule itself, the law would not afford capability of dealing with many situations liable to arise. Failure to keep in mind its logical basis and precise limitations would result in the mischief of extending its application till, in time, the inviolability of trusts would be destroyed and no person could create one with any certainty of its duration according to his wishes.''

We are of opinion, and therefore hold, that it was error to put to sale portions of the *corpus* of the trust estate for the purpose of applying the proceeds immediately to the maintenance of the life tenant and children. The full power of the court to vary the

settlor's scheme under the conditions appearing, which show an emergency in the lack of maintenance which the trust creator did not foresee, is to sell for improvement of the trust estate; or to sell for re-investment in property which will produce a better income (as in *Lenow* v. *Arrington,* supra, 111 Tenn., page 736, 69 S. W., 314); that property in its new form to be devoted to the same use and to go in the same direction and upon the same contingencies as that which is now a part of the trust estate. The proceeds cannot be distributed to or consumed by the life tenant or her children. That might result in a subversion of the purpose of John Shelby Barrow—a thing not to be justified by the doctrine of imputed change of intention on his part had he survived, which, as seen, concerns only the method of management and may not be availed of to take away fundamental and substantial rights, even of a contingent nature. The necessities of the life tenant cannot be thus satisfied at the expense of another object of the trust creator's bounty.

(b) Other considerations enter into the solution of the problem presented where the trust itself is threatened with destruction. In that case an exigency necessarily arises, and one, too, that involves the estate as such, and affects therefore all interests in the property—not the life tenant alone. The court will always imply an intention on the part of the creator of the trust that its subject-matter should not be per-

mitted to be lost, thereby bringing the scheme in its entirety to annihilation.

Such an emergency usually arises because of the existence of taxes, special assessments for improvements, or some contractual lien fixed on the property.

In *Burroughs* v. *Gaither,* 66 Md., 171, 7 Atl., 243, it was said:

"Under such circumstances, and where there was no other means of raising the necessary funds, we are of opinion the court had the power to sell or mortgage a part in order to rescue the whole or as much of it as possible from this impeding *vis major.* It was a power derived from the necessity of the case, and one which every prudent owner would use, if he found his property in such a dangerous position. These *cestuis que trust* were the equitable owners of the property, and a court of equity was managing it in their interest and for their benefit, and in such an emergency, and for such a purpose, we think the court was clothed with all the powers of absolute ownership."

It is said in *Re Application of Upham,* supra, that even in such circumstances:

"Equity may bar remaindermen *in esse* and possibility, those holding vested and those holding contingent interests, all, so as to change the title, absolutely, to the entirety, if that be, and only so far as that may clearly appear to be, necessary, but cannot extinguish the right of persons in the equivalent—the subject of the trust in the new form—to possess

it presently or contingently, actually or possibly, or enjoy the income of it in the time and in manner and proportion, intended as to the original subject."

It does not appear, however, that the taxes, and special assessments exceed the income derived from the trust estate, or that a loss or destruction is threatened from any such source.

The court of civil appeals placed its ruling on the ground that the paramount intention of the creator of the trust was the securing to his wife and children of "a proper and sure support." We think that, while this is true, his further intention was, at the time the trust was created, that this should be done out of the revenue derived from the estate, without sales being made by the wife after his death, and the *corpus* thereby resorted to.

It is entirely proper to look to that paramount purpose when the court comes to determine the implied intent of the settlor, above discussed, as a matter directly bearing thereon; but it cannot be allowed to override and render nugatory the intention to restrict the power of sale as vested in his wife; that is to say, "the *corpus* shall remain unimpaired." While that purpose is paramount, it is not all-dominant.

The result is that the chancery court had the power to bring to sale portions of the trust property, pursuing the statutory method to that end, for the purpose of maintaining, as above outlined, Mrs. Barrow and her invalid daughter, as a member of her family, in a manner in keeping with the station in

life that they held in the lifetime of John Shelby Barrow.

It follows that the deed tendered to Mrs. Spotswood will, on acceptance, vest in her a good title.

The purchaser will not be under obligation to see to the application of the purchase money or the disposition of the proceeds of the sale. *Jackson* v. *Everett,* 3 Tenn. Cas., 811, 58 S. W., 340; *Bruce* v. *Goodbar,* 104 Tenn., 638, 58 S. W., 282, and cases cited.

Let a decree be entered modifying the decree of the court of civil appeals, and for a remand of the cause for further proceedings in the chancery court. Costs of the appeal will be paid, one-half by the appellant and one-half by the appellees.