WILKERSON et al. v. EVERETT et al.—221 S. W. (2d) 537.

Western Section. July 2, 1948.

Petition for Certiorari denied by Supreme Court, Oct. 16, 1948.

12

Metcalf, Apperson & Crump, Memphis, for complainants.

Alfred Sohm, Memphis, for defendants.

PER CURIAM. The bill seeks a construction of the will of John T. Everett, deceased, and to appoint substitute trustees in the place of the trustees named in the will and to confer on the substitute trustees all the power and authority given to the trustees named in the will.

The bill was filed by the complainants Mrs. Louise Bailey Everett, Jeanne Everett Wilkerson, Joyce Everett Donaldson, John T. Everett, Jr., and William B. Everett, as the widow and children, respectively, of and beneficiaries under the will of John T. Everett, deceased against Joyce Susanne Wilkerson, a minor two years old, the daughter of complainant, Jeanne Everett Wilkerson and Richard William Donaldson, a minor three years old, son of complainant, Joyce Everett Donaldson, said minors being the only grandchildren and contingent beneficiaries under the will of their grandfather, John T. Everett, deceased; the minors are made defendants in their own right and as virtual representatives of all persons that may hereafter stand in the same class with them, as well as representing all persons who might, under any possibility, take any interest in remainder in the estate, on the termination of the estates of the respective parties hereto.

The bill alleges that the defendants National Bank of Commerce in Memphis, and W. A. Montgomery named as executors and trustees under the will of John T. Everett have, in writing, declined to act as trustees; that the widow is given the power to change the trustee, but in such event the succeeding trustee must be a corporation having paid in capital stock of at least "two million dollars."

That the First National Bank and Union Planters National Bank & Trust Company of Memphis are the only other corporations in this vicinity qualified to act under the terms of the will and that each of these banks, in writing, addressed to complainant, Mrs. Louise Everett, have stated that they would not be willing to accept appointment as successor trustee under the will, and that therefore it has become impossible to comply with the aforesaid provision, and prayed for the appointment of Mrs. Louise Bailey Everett, John T. Everett, Jr., William B. Everett and William M. Wilkerson as substitute trustees.

The two minors being without regular guardian, Mr. Alfred Sohm, a member of the Shelby County Bar, was appointed by the Court as guardian ad litem for them in their own right and as representatives of all persons that may hereafter stand in the same class.

The guardian ad litem filed formal answer.

At the hearing the Chancellor construed the will favorably to the contention of the complainants, appointed substitute trustees as prayed for and clothed them with all the power and authority granted the trustees named in the will, fixing their bond at twenty-five thousand dollars.

From the decree the guardian ad litem has perfected an appeal to this Court; has filed a brief of the facts, and has assigned errors on the decree without argument thereon.

The Chancellor's opinion is in the record and in which is found all the facts necessary to be stated.

The opinion covers fully and correctly the question to be determined and on which the decree is based.

It would serve no useful purpose to rewrite this opinion; therefore we adopt the opinion of the Chancellor as the opinion of this Court:

"There is pending here the case of Mrs. Louise Bailey Everett, Jeanne Everett Wilkerson, Joyce Everett Donaldson, John T. Everett, Jr., and William B. Everett, complainants vs Joyce Susanne Wilkerson, Richard William Donaldson, and others, N. 50661 R. D.

"The complainants in this cause are the widow and adult children of John T. Everett, deceased. The defendants are the trustees named in a testamentary trust under the will of John T. Everett, the living contingent remaindermen under his will, sued both individually and as virtual representatives of all of contingent remaindermen. By amendment, further contingent remaindermen are made parties defendant, and thus, all persons interested in any wise in the estate of John T. Everett, or in the construction of his will, are before the Court.

"The original bill in this case, after setting out the relationship of all the parties, and the death of Mr. Everett, seeks a construction of the testamentary trust set up in Mr. Everett's will, in a double aspect; that is to say, whether or not the will of Mr. Everett is properly to be so construed as to authorize the trustees under that will to make loans and/or to secure which, mort-

gages and deeds of trust encumbering the real assets of the estate are to be executed; and, secondly, if that be not the proper construction of the will of John T. Everett, deceased, whether the case be proper one under the inherent jurisdiction of equity in such cases, for the court to authorize and direct the trustees to make loans and to secure such loans by mortgage or trust upon the real assets of the trust estate, under the doctrine of imputed intention—. That is to say that by reason of exigency or emergency arising after the death of the testator, of such character as not to have been foreseen by him, the purposes of the trust will be defeated, or the assets of the trust seriously jeopardized or annihilated—, then equity may authorize action or conduct on the part of the trustees beyond that granted in the will, or, if necessary, in opposition or contrary to the authority granted in the will, to meet such an emergency; the equitable power or jurisdiction being exercised to thus avoid a complete or pro tanto defeating of the dominant purposes of the testator, or to avoid the dissipation of the trust assets by reason of such uncontemplated exigency or emergency.

"The original bill further reflects that the trustees designated in the testator's will have declined to act; and the original bill seeks the appointment of substitute trustees and a declaration that the rights, powers, discretion and duties granted to the trustees in the will shall pass likewise to the substituted trustees.

"It appears that John T. Everett died on December 13th, 1945 leaving a will executed in 1935, supplemented by a codicil, executed in 1937. Stated only in round figures, the decedent left a personal estate, after the payment of ordinary expenses, of approximately $10,000.

Now, other than securities, he left a piece of real estate which is referred to in the record as Tract No. 2 in the northern part of the City, I believe the northeast corner of Front Street and Henry Avenue, having an appraised value of approximately $8,500. The decedent further left a tract of real estate which is referred to in the record as Tract No. 1, which by reason of a sale of the middle portion to the Board of Education of the Memphis City Schools in face of impending condemnation is in fact now two separate parcels of real estate, in the south part of the City. At the time of decedent's death, and at the present time, this realty is improved with what are commonly called 'shotgun' colored rental houses, approximately 120 in number, in a bad and steadily worsening state of repair, and at the present time jeopardized by the necessity of compliance with certain health and plumbing ordinances at great expense; the property yielding at the present time a gross income of some $5,000, but that, of course, without repairs.

"At the time of Mr. Everett's death, he left a widow and four children; all of these children are now adults; three of the children are married, and two of the children have a child of their own. Mr. Everett left, as stated before, a will containing a testamentary trust. After the usual provisions directing the payment of his debts and confirming the right, title and interest of his wife in and to the personal and household goods, Mr. Everett left all the rest, residue and remainder of his estate, real, personal and mixed, and wheresoever situated, to the National Bank of Commerce in Memphis, as trustee, to be held, managed and controlled by such trustee under the terms of the trust; further, he directed the trustee should invest the 'funds' comprising the trust estate

in such securities as are authorized by the laws of the State of Tennessee as investment for trust funds. He further provided for payment of all taxes, providing the trustee considers assessment fair and reasonable, payment of reasonable repairs, and all expenses incident to the administration; he directed the trustees to pay over the net income from the trust to his wife, Louise Bailey Everett, in such installments as she should desire, those payments to continue for and during the lifetime of his said wife, or so long as she remains his widow.

"The trust provisions further directed or contemplated, rather, that the wife should properly maintain, educate and support the children, and the trustees were first authorized to encroach on the corpus of the trust estate for that purpose. The testator then authorized a further encroachment on the corpus of the trust estate at the discretion of the trustee and the widow, if living, in the event of any undue misfortune or illness. On the death of his wife, the testator directed that the trust should continue, but that the trust res should be divided into as many equal parts as the testator should have children, for the children of any deceased child to take the share of the parent. The trustee was then to invest the 'funds' of each child's trust estate in such securities as authorized by the laws of the State of Tennessee as investments for trust funds.

"The testator then directed how the income of those trusts should be paid, and finally provides that as each of his sons reaches the age of 30 years, the trustee shall pay over to him his trust estate, and the trust as to such child shall cease and determine. That becomes important at the present time because in the case of the two sons of the decedent, the trust as to the younger of them has

only approximately six years to run. Now the will goes on to set out similar provisions in the case of the daughters of the testator, of which there were two, and in the original will, provided the trust to continue in the case of the daughters. However, by codicil, the testator directed the termination of the trust in the case of the daughters as they reached the age of 35; and I believe in the case of the two daughters that leaves only a period of approximately eight years for the trust to run.

"It is only necessary to mention in passing here that provision is made for the situation if there should be neither children nor grandchildren at the time of the falling in of the trust estate, and the parties interested in that contingency are fixed by name in the will, and are made parties defendant to the case as it now stands.

"Other provisions are made with respect to the substitution in case of death, quite elaborately covering the various contingencies which could occur, but are not especially necessary to consider here at the present time. After covering all such contingencies for the vesting of the corpus of the trust estate, upon termination, the testator came to Item No. 6 of his will, which is as stated below. It is out of this item, and the prior provisions which have been mentioned as to investment of the 'funds' of the trust that the present questions arise, and on construction of which they largely turn:

" 'The trustee shall have the following rights, powers and authority; to make long term leases on real estate, such leases being binding on remaindermen; with the written approval of my wife where the term of the lease is in excess of five years. With the written approval and concurrence of my wife, to sell or exchange any real estate forming a part of the trust estate, at such price

and on such terms as the trustee and my said wife may deem advisable, and the purchaser at such sale of real estate shall be relieved of the necessity of seeing to the application of the proceeds. The proceeds of such real estate shall be considered as personalty; to invest the funds of the trust estate in such securities as are authorized for the investment of trust funds under the laws of the State of Tennessee; to sell or exchange any securities forming a part of the trust estate and to hold in unchanged form any such securities; to refinance any loans existing on the trust estate and to make new loans if necessary. My executor is also given such authority.' "

"The testator then makes provision for the allocation of premium or discount as between income and corpus, relieves the trustee of liability for loss or depreciation of the value of the trust property unless it shall have failed to act with reasonable care, providing always that such investments are made in securities authorized under the laws of Tennessee for investments by fiduciaries. Then the will contains a spend-thrift clause and makes provision for the designation or change of trustees under the will by the wife, or in case of the death of the wife, the adult daughters.

" █ Now, first, under the provisions of this trust, there does not appear to be any doubt from all of the authorities the Court has considered, of the power to appoint the new trustees, as sought in the original bill; nor does there seem to be any doubt as to the propriety of the appointments as suggested in the original bill. In the light of the duties of the trustees, as fixed in this will, the nature of the trustees named and the subordination in several material respects of the will of the

trustees to that of the widow, does not seem to leave any doubt, under the authorities, but that all powers, rights and obligations as set out in the will would, and should, pass to the substituted trustees. The prayer of the original bill in that respect should be and is, granted in full. It is noted that the substitute trustees have stated on the record that they shall serve without compensation.

"■ Now, bearing upon the further construction of this will, it is pertinent to note some facts briefly which appear in this record. It should be kept in mind that the testator knew prior to his death very fully the nature, extent and character of his property, the situation of his property, the likely income from the property, the potentiality of his property. It is important to keep in view especially the dominant purpose as it appears from the testator's will, since this will lacks almost entirely the statement of specific purpose, both with respect to devolution of the property, and with respect to powers and authority; it simply grants power, but without the frequently encountered statements of specific purpose or time or limitation. So, this will under the rule in Tennessee, in the absence of specific limitation and specific purpose, is to be construed largely in light of the dominant purpose appearing from the will as a whole, which is the support, maintenance, care and education of the widow and children. Vestiture of the property beyond that in others is, under this will, purely secondary devolution.

"The trust in this case does not bear the interpretation as is so often the case, of a rigid purpose on the testator's part of preservation at all costs of the trust estate for devolution to remaindermen, as its dominant purpose.

"At the time of his death, as it appears from this record, the testator was well aware of the nature, kind and condition as well as the prospects of the two named real assets of the trust estate, which are Tracts Nos. 1 and 2, as they were referred to in this record, Tract No. 2 being a small tract of property in the northern part of the City at the corner of Front and Henry Streets, which contains some few Negro rental houses in quite a dilapidated condition.

"The power of sale of that tract is, of course, directly conferred under the terms of the will upon the trustees. Now, with respect to Tract No. 1, the record is a little confused as to whether or not that tract as it stood as of the testator's death, and now, is a tract of approximately 14 acres, or a tract of approximately 18 acres. The southern part of it after the tract was cut in two by the purchase of the Board of Education, referred to before, fronts on South Parkway. That has on it, Negro houses on which there has been little or no repair maintenance over the past years. It differs in respects, which will appear momentarily, from the northern part of that tract, of approximately 14 acres.

"On this larger portion of the tract, there are, as stated, some 120 Negro rental houses, subject at the time of the testator's death, as now to national rental regulations, and subject as well to ordinances of the City of Memphis, which will require when enforced the installation of inside plumbing facilities, of which there are now none. From the record it appears that this will entail an expense of some—and again stating it in round figures —$400.00 per unit; it also appears from the record that these houses, in an increasingly worsening state of repair, would require to rehabilitate them generally so

as to be properly operated as rental property, an expenditure in addition of some $300.00 per unit.

"At the time of the testator's death, as now, there are not sufficient funds in the estate to accomplish such a purpose. In addition, if accomplished, this record shows that property if operated as low income housing could quite likely never be made to produce an income sufficient to justify the expenditures of any such sums for its modernization, or repair and improvement would be required. The proof shows beyond doubt that the advisable thing to do is to improve this property for industrial development purposes. The proof shows without any dispute that that was the plan which the testator himself had in mind. This too is explanatory of his lack of interest in the property as low income rental property, and of his election to make no repairs on that property other than bare essentials for a number of years prior to his death.

"Now it appears in the record that the development of this property as industrial sites may be done under what is a fairly prevalent plan now; that is, that a sufficient amount might be borrowed upon units of this property to furnish the funds necessary to the construction of the industrial buildings, the loans of such necessary amounts to be secured by deed of trust on the specific property. This would not encumber any other of the trust assets than that unit. Such loan would be further secured by an assignment of the rents to come from that property, the prospect being that long-term leases with concerns of national scope and unquestioned solvency might be obtained prior to construction and that the returns of such leases would serve in periods of 10, 15, or 20 years to liquidate the amortized loans made for the construction.

"Of course, if the property bears such handling as that by the trustees, it is equally valuable to persons other than these trustees for such purposes; and its sale value is no doubt enhanced by reason of such prospects. This record shows without dispute in the opinion of the experts testifying and those mainly interested in the estate that it is not advisable to sell this real property as suggested; and that such sale would result in some sacrifice at this time. All of these facts which have been mentioned were indubitably known to the testator at the time of his death, including the plans of the development of the trust property. It is that state of facts out of which the questions arise here; first, as to whether the will or trust of John T. Everett is to be properly construed as to authorize and empower the trustees named to encumber or mortgage the trust real estate for the purpose of improvement under the facts appearing; or if not then should the inherent power of equity be invoked to so authorize and direct the trustees upon disclosure of exigency or emergency not contemplated by the testator.

"This exigency or emergency, distinguished under the law from expediency or advisability, in the case of trustees, may take one of two forms under the Tennessee cases, such as Bennett v. Nashville Trust Company, 127 Tenn. 126, 153 S. W. 840, 46 L. R. A., N. S., 43, Ann. Cas. 1914A, 1045, and Weakley v. Barrow, 137 Tenn. 224, 192 S. W. 927. The first is, that due to circumstances not contemplated by the testator, the income from the trust so far fails to accomplish the purpose of the trust as to amount to a defeating of the testator's intention; and the second, that such emergency or exigency has arisen as imperils the trust assets.

" I do not believe that the rule of imputed intention, invoking the inherent equity jurisdiction to vary from the terms of the trust, can be applied to the case at bar in the light of the testator's intimate knowledge of this property, its condition, its yield and its prospects, and his intentions with respect thereto during life. I cannot find under this record emergency or exigency such as appears in the reported cases. The increasing jeopardy of the property in its existing condition and use must have been contemplated by the testator. I cannot reconcile what the testator knew and his own intentions with any finding other than that the testator did contemplate the situations with which the trustees are now faced. I do not believe that the original bill may be properly sustained upon the doctrine mentioned, and as announced in Henshaw v. Flenniken, 183 Tenn. 232, 191 S. W. (2d) 541, 168 A. L. R. 1010; Weakley v. Barrow, supra and Bennett v. Nashville, supra, McGavock v. McGavock, 8 Tenn. App. 477, and other authorities cited.

"However, the knowledge of the testator and his intentions during life, as disclosed by the proof, with especial reference to the trust real estate, has unusual significance upon the other aspects of this case; that is, whether this will properly bears the construction that the trustees under it are authorized to mortgage or encumber the trust realty to serve the dominant purpose of the will; and that without in any wise increasing the quantum of the estate of the living tenants, or in any wise depleting the quantum or quality of the estate of the remaindermen. It is apparent that the dominant purpose of the testator under this will is the providing of a proper income for his widow during her life or

widowhood, in keeping with her station in life and mode of living during the testator's life, including the needs of the children, to the extent that the assets of the trust estate may be made to provide same without encroachment or depletion thereof, beyond such as is specifically granted in the will; and further the providing of income to the children of the testator prior to the time he fixes for the termination of the trust, and grandchildren in their stead in exactly similar manner in the event of the death of the children.

"Now, with respect to the real estate under this will, the testator has first vested trustees with authority to hold, control and manage; he has given authority to make long-term leases, such leases being binding on remaindermen; he has given—and these powers are expressed—the power to sell or exchange; and then he gives the power, in this language, 'to refinance any loans existing on the trust estate.'

"Under the present record, the Court has been unable to see anything to which that language could relate except to mortgages for deeds of trust upon the trust real estate, which the testator might have placed thereon during his lifetime. The language used, in the ordinary vernacular of the loan and real estate business, has no direct connotation to personal property or loans thereon, or pledge thereof. It seems to refer entirely, and especially so in view of this record, to loans existing against real estate. What seems clearly contemplated is that the testator might have encumbered this property during his lifetime, and quite likely for such purpose as is now deemed advisable, which the testimony shows he had discussed from time to time.

"The testator unquestionably had stated such a plan among his family, and it is apparent that that has permeated the thinking of every member of the family; and I have no doubt the originator of the present proposals was Mr. Everett himself. After the conjunction 'and', that sentence goes on, 'to make new loans, if necessary.' That sentence must refer, or that clause of the sentence must refer to the same subject matter as the first clause preceding the conjunction; and to my mind can have no meaning other than in connection with the testator's contemplation that the trustees under his will might encounter the necessity of encumbering the trust real estate and his purpose that they should have that power.

" ▪ Now, as we noted at the outset here, there is no expression of limitation, or, what is more important, no specific expression of purpose; so, that clause of the will is to be construed, under the law of Tennessee, in the light of the language vesting the title in the trustees, that is, to hold, manage and control, and in the light of the dominant purpose of the testator which has been previously mentioned. It is the law of this State that where powers be granted in a will or trust, as in case of the granting of powers by contract or by statute, that things incidentally essential to the execution of that power are regarded as falling within it; or, that is to say, collateral powers or implementary powers are regarded as also granted; by analogy, the case of Wilson v. M. E. Zion Church, 138 Tenn. 398, 198 S. W. 244, 245, involving the power of the trustees of one of these unincorporated religious associations flowing from the right given by statute to own and hold an amount of real estate for a church and parsonage is illustrative. The trustees of that unincorporated association, for the pur-

pose of obtaining funds for such parsonage and church, had executed an obligation purporting to be that of the institution. A paragraph or two is all that is necessary to present the analogy to the present case. In upholding the power given by statute, the Tennessee Supreme Court said this:

" 'Every corporation in addition to the powers expressly conferred by its charter has such implied powers as are reasonably necessary to accomplish the purpose for which it is authorized . . . Likewise, these religious associations, endowed with certain powers expressed in the statutes and noted above, have such additional powers as are necessarily implied from those granted. The expressed authority to hold land for the purpose of public worship or for a parsonage implies authority to erect a house of worship and a house for the pastor. The authority conferred on the trustees of such an association to hold land for the use and benefit of the association and the authority to sell such property implies a power to preserve and improve the same, so that it may be of use and benefit to the association, and may be maintained in condition to sell. We think, therefore, the trustees of every unincorporated religious association are entitled, ''according to the regulations of church or congregation,'' to incur indebtedness for the erection of a house of worship or parsonage, or for the repair and improvement of such house of worship or parsonage.' ''

''Now, this: 'Having authority to incur an obligation of this character—,' and this was a debt, '—it follows that they may execute a note as evidence of such obligation and bind the property of the association for the payment of such note.'

"So, as here, where the authority is directly granted to make new loans if necessary, then those powers incidental, and of which the testator must inexorably have known and thought, the necessity of securing, those incidental powers are to be inferred. Certainly, in the absence of specific denial, power is to be implied where it is essential to the effectuation of power granted.

" ■ In this state, in the case of Jackson v. Everett, 3 Shannon's Cas. 811, 58 S. W. 340 and Steifel v. Clark, 68 Tenn. 466, our Court seems to me to hold that under the circumstances of those cases the power to sell, as is here granted, included the power to mortgage, in the absence of intention to the contrary to be found. It may well be that our Court will later say those cases are to be confined to their specific facts. The majority rule throughout the country seems to be that the power to sell, standing alone, does not include the power to mortgage, but I find the text writers and note authors and authorities generally regard those two Tennessee decisions as placing Tennessee among those states which hold, and without qualification, that the power to sell is the power to mortgage.

"Of course, what is said just above leaves out of view the additional language which is directly pertinent in this will, 'to make new loans'. It also ignores the analogy of Wilson v. M. E. Zion Church, supra, the implication of the incidental powers.

" ■ However, under the authority expressly granted in this will to trustees, to hold, manage and control, under the express provision for the refinancing of any existing loans on the trust estate and the making of new loans, if necessary—it seems to the Court that the power to mortgage is granted by this will, and for the purpose

of making improvements to implement the dominant testamentary purpose but under no circumstances to diminish or deplete the quantum or quality of the estate of the remainder, or to increase the quantum or quality of the estate of the priority takers of the income.

"I believe this construction is sustained in cases from other jurisdictions which are quite similar, such as, in re Windsor Trust Company, 1911, 142 App. Div. 772, 127 N. Y. S. 586; and a rather elaborate opinion of the Supreme Court of Wisconsin, in Lueft v. Lueft, 1906, 129 Wis. 534, 109 N. W. 652, 7 L. R. A., N. S., 263. Much of the language of Ely v. Pike, 115 Ill. App. 284, is pertinent.

"In the case of Weakley v. Barrow, 137 Tenn. 224, 192 S. W. 927, it is positively held by the Supreme Court that equity has jurisdiction to sell unproductive property for the purpose of improvement or development of other property where that appears to be essential to the effectuation of the dominant purpose of the testator or trustor. The same rule is applied in McGavock v. McGavock, 8 Tenn. App. 477, which is an excellent opinion by Judge Dewitt.

"█ Now, it is true that the Supreme Court of Tennessee in Cowan v. Hamilton National Bank, 177 Tenn. 94, 146 S. W. (2d) 359, stated the rule to be that a trustee having power to invest trust property according to his best judgment and to pay over the income from same to beneficiaries and to change investment at discretion, has no authority to pledge any part of the trust property as security, though money obtained from such loans may go into the fund and is expended for trust purposes; that undoubtedly is the rule in this state so far as it went. It is that rule which would make it essential

that the trustees, when confronted with such a situation, should invoke the aid of equity under the imputed intention rule.

"█ Now, I believe, too, from all the law of Tennessee I have read including that you gentlemen gave me citations to, that the rule is imputed intention would not or should not be held to authorize the power to mortgage to improve unless it first appeared that sale of the property, though the power be not granted, was not advisable, or at all feasible under the circumstances of the given case,—even stronger than 'not advisable', that sale would result in detriment to the estate, before the power to mortgage would be decreed under the doctrine of imputed intention, since one of the elements of that doctrine is lacking.

"I find nothing in Tennessee which militates against the construction now given this will, specifically that language in Item 6, which has been referred to as granting the power to these trustees to mortgage in the exercise of good faith for the purpose of improvement. The repeated admonitions of the testator as to the investment of the 'funds' of the trust estate found in this will, in the light of the situation that the testator knew the trustees would be confronted with, can only properly be applied to the funds over and above, and not essential to preservation of the trust estate and the holding, management and control thereof by the trustees under the construction herein given the testator's language."

In view of this opinion the Court in its decree construed the language of the will to give the trustees the power and authority, in addition to that clearly given, to improve the real estate belonging to the trust, industrially and otherwise, so as to produce for the testa-

tor's beneficiaries the largest increase in both capital and income reasonably possible in order to carry out the dominant intentions and purposes of the testator with respect to his real estate and toward his beneficiaries, and to that end that the power to make and renew loans on real estate and to sell real estate and to use the proceeds from such loans and sales for the purpose of improving such real estate is given by said will.

There is no error in this decree.

All assignments of error are overruled and the decree of the Chancery Court is in all things affirmed.

The cause is remanded to the Chancery Court for proceedings there consistent with this opinion.

The costs of the cause, including the costs of this appeal, are ordered paid out of the trust estate of John T. Everett, deceased.