Merrimack,
Dec., 1897.

## ROLFE AND RUMFORD ASYLUM *v.* LEFEBRE.

Where the subject-matter of a suit is a public charity, no final disposition thereof can be made unless the state is represented.

Under a devise in trust, on the express condition that the trustees shall hold and apply the estate to a specific charitable purpose, with no power of sale by them during the term of ninety-nine years from and after the time when the will shall take effect, the trustees cannot of themselves make a valid conveyance of the trust property; and such devise, being for a charitable trust, is not within the rule against perpetuities.

If it clearly appears that an alienation of the trust property will be for the benefit of the charity and in furtherance of the purposes of the trust, a court of equity has jurisdiction to authorize such conveyance upon petition of the trustees.

Under a devise in trust for a charitable purpose, and in the event of the failure of the trustees to faithfully comply with its terms and conditions, to L and his heirs, the gift over is void as contrary to the rule against perpetuities.

BILL IN EQUITY, asking for the construction of the will and codicil of Sarah Thompson, called Countess Rumford, and asking the advice of the court as to the power and duties of the

trustees under said will. Facts found by the court. The will and codicil were approved and allowed March 22, 1853. The plaintiffs are a corporation organized as successor to the trustees named in the will, and have all the powers of the original trustees. The will and codicil, so far as material, are as follows:

### WILL.

"I give, devise, and bequest to the said town of Concord, in New Hampshire, the place of my nativity, my real estate in said town, known by the name of the Rolfe estate, inherited by me from my brother, the late Col. Paul Rolfe. This devise to the said town of Concord is on the express condition . . . that said town shall hold and apply the said property to a charitable purpose, namely, the forming and maintaining an institution for the poor and needy, — particularly young females without mothers, — making my said home and estate, known as the Rolfe estate, the seat of it, and bearing the name of the Rolfe and Rumford Asylum, and with no power of sale by said town during the term of ninety-nine years from and after the time when this will shall be proved and allowed. And in case of the failure of said town of Concord to accept said devise on said terms and conditions within one year after this my said will shall be proved and allowed, or to faithfully comply with said terms and conditions after the same shall have been accepted, then I give and devise said estate, subject to the annuity of said Emma Gannell Burgum, to said Joseph Amidie Lefebre, now or hereafter to be called Joseph Amidie Rumford, his heirs and assigns forever."

### CODICIL.

"I hereby revoke the devise made in my said will to the town of Concord, and instead thereof I give and devise the said real estate in said will devised to said town, to Francis N. Fisk, of Concord; James F. Baldwin, of Boston, Massachusetts; Joseph B. Walker, Ebenezer S. Towle, and Samuel Coffin, of said Concord, New Hampshire, as trustees in fee simple, together with the sum of fifteen thousand dollars. The said real estate to be held and appropriated by said trustees and their successors in said trust in the same manner and for the same purposes as it would have been held under my said will by said town of Concord. And the said sum of fifteen thousand dollars is to be held and invested and the income thereof appropriated by them to the founding and maintaining of the said institution to be known as the Rolfe and Rumford Asylum. But I farther direct and provide that the said institution shall be confined to children who are natives of said

town of Concord. It being my intention with this last men-
tioned additional provision merely to substitute trustees as
herein named in place of the town of Concord and to add said
bequest for the purpose of better carrying out my intention as
to said institution. In all other respects my will is to stand
as heretofore declared.

"I hereby revoke any part of my said will inconsistent with
this codicil. In all other respects I confirm the same."

In February, 1896, the Concord & Montreal Railroad con-
demned a portion of the land included in the Rolfe estate,
bequeathed in trust as aforesaid, for side tracks, engine houses,
etc., and upon a hearing the plaintiffs were awarded the sum
of $1,800 for the land so taken. An appeal from this award
was taken by the plaintiffs, which is now pending in the su-
preme court for this county. Since the appeal was taken the
railroad has offered to pay the plaintiffs the sum of $2,500 for
the land so taken, provided they will give to the railroad a
quitclaim deed of the land. It is for the benefit of the bene-
ficiaries and in furtherance of the purposes of the trust if the
plaintiffs are permitted to alienate the condemned land and to
give the railroad a deed thereof.

The plaintiffs have been advised that under the trust created
by said will and codicil, the limitation over to Lefebre in case
of the failure of the trustees to faithfully comply with the terms
and conditions of said codicil and not to alienate the property
as provided therein, is void and of no effect, and by reason
thereof that the trustees are seized of all the trust property
in fee and have a legal right to sell and convey the same with
the permission of the court whenever they may deem it for
the interest of their *cestui que trust.* They therefore pray the
advice of the court as to their powers and duties under the
aforesaid will, and that they may be advised as to their power
to give the railroad a quitclaim deed of the land without for-
feiting the trust estate; and in case the court holds that the
plaintiffs have such power, then they pray that the court may
give their assent and license to such transfer.

*Sargent, Hollis & Niles,* for the plaintiffs.

PARSONS, J. "The subject-matter of the suit being a public
charity, no final and conclusive settlement can be made unless
the state should be represented. Sto. Eq. Pl., ss. 8, 49, 69, 222."
*Society* v. *Society,* 55 N. H. 463, 467. This objection may be obvi-
ated by an amendment making the attorney-general a party.

The first question is whether the trustees have power under
the will to alien the trust property. It is clear that they have
not. The gift is to them "as trustees in fee simple," "on the

express condition that . . . they shall hold and apply the said property to a charitable purpose" named, " with no power of sale by them during the term of ninety-nine years from and after the time" when the will shall take effect. Upon a view of these provisions most favorable to the plaintiffs, the provisions are " limitations to be regarded as regulations to guide the trustees and explanatory of the terms upon which the devise has been made, they create a trust which those who take the estate are bound to perform, and, in case of a breach, a court of equity will interpose and enforce performance." *Stanley* v. *Colt*, 5 Wall. 119, 165.

A gift for a charitable trust is not within the rule against perpetuities, and a general or partial provision against alienation is not invalid. 2 Per. Tr., *s.* 736 ; Gray Perp., *s.* 589. A direction " that the real estate devised should not be alienated makes no perpetuity in the sense forbidden by the law, but only a perpetuity allowed by law and equity in the cases of charitable trusts." *Perin* v. *Carey*, 24 How. 465, 507. That under the terms of their trust the plaintiffs cannot of themselves make a valid conveyance of the trust real estate appears to be conceded by them, for they ask in the bill for the permission of the court to make such conveyance.

" In England, and in this country where a court of chancery exists, a charity of the description in question is a peculiar subject of the jurisdiction of that court, and in cases of abuse, or misuse of the charity by the trustees or agents in charge of it, this court will interpose to correct such abuses and enforce the execution of the charitable purposes of the founder. So, *by* [when?] lapse of time, or changes as to the condition of the property and of the circumstances attending it, have made it prudent and beneficial to the charity to alien the lands, and vest the proceeds in other funds or a different manner, it is competent for this court to direct such sale and investment, taking care that no diversion of the gift be permitted." *Stanley* v. *Colt*, 5 Wall. 119, 169 ; 2 Per. Tr., *s.* 737, n. 2 ; Gray Perp., *s.* 590, n. 3. A condition that the trustees of a charitable trust shall not alienate the land which is the property of the trust will not prevent a court of chancery from permitting, in case of necessity arising from unforeseen circumstances, the sale of the land and the application of the proceeds to the purposes of the trust. *Jones* v. *Habersham*, 107 U. S. 174, 183 ; *Ould* v. *Washington Hospital*, 95 U. S. 303.

The power of this court, as a court of equity having general jurisdiction of the subject of trusts, over the investment and change of securities in the hands of trustees, has been recognized in *Society* v. *Harriman*, 54 N. H. 444, and in *Petition of Baptist Church*, 51 N. H. 424. In the former case, the bequest to the

plaintiff society was "all of my real estate in Goffstown to them, to have and to hold the same forever for a minister's home." The real estate, from its condition and the situation of the property, was found to be substantially worthless, and a sale was authorized. In neither of these cases was there any condition or limitation declaring the property inalienable in the hands of the trustee, and the precise question here raised was not decided; but in the light of the unbroken current of authority in this country and in England, the authority of this court sitting as a court of equity in the case of charitable uses and trusts (P. S., c. 205, s. 1) to entertain the plaintiffs' petition is not open to argument. (It is stated in a note to Gray on Perpetuities that in only a single case in this country and in England has an opposite view been adopted. Gray Perp., s. 590, n. 3; *Tharp* v. *Fleming*, 1 Houst. 580.)

But although the power exists, it should be exercised cautiously and only where it clearly appears that the proposed alienation is clearly for the benefit of the charity. *Attorney-General* v. *Ashton*, 22 Beav. 288; *Attorney-General* v. *Kerr*, 2 Beav. 420, 428; *Attorney-General* v. *Newark*, 1 Hare 395, 412; *College* v. *Attorney-General*, 6 H. L. Cas. 189, 205. And as a general rule, the provisions made by the donor of the charity for the inalienability of the whole or a portion of the trust property should not be interfered with unless from a change in circumstances since the creation of the trust it is apparent the proposed alienation and violation of specific instructions in that respect will accord more nearly with the general purpose than an adherence to the special provisions which might in some cases impair, if not destroy, the trust. *Society* v. *Harriman*, 54 N. H. 444, 446.

In the present case, it is found as a fact by the court at the trial term that it is for the benefit of the beneficiaries and in furtherance of the purposes of the trust if the plaintiff trustee is permitted to alien the land. The facts reported fully justify this finding. It appears that the land which the plaintiffs ask leave to convey has been condemned for railroad purposes, and that the plaintiffs have been awarded $1,800 for the land so taken, from which award the plaintiffs have appealed. Pending the appeal, the railroad corporation offers the plaintiffs $2,500 for a quitclaim deed of the land. It thus appears that the plaintiffs will be deprived of all present beneficial use in their land in any event, and the sole question would seem to be by what course they can obtain the largest compensation therefor. The reversionary interest after the possible extinction of the public use may and probably would be practically worthless to the plaintiffs; but while this right may be of little worth to the plaintiffs, the difference between a title in fee simple and a title for public use merely, may be or be thought to be of some value to the

railroad corporation.   While possibly the plaintiffs may recover more upon appeal, it may and would probably be of advantage to the trust to accept less than they might possibly receive as the result of further litigation.   Whether it is for the benefit of the charity to accept $2,500 for a quitclaim deed rather than to pursue their appeal, is pre-eminently a question of fact dependent upon the foregoing and other considerations, and there is no ground for disturbing the conclusion of the trial term.

The trustees further ask the advice and direction of the court upon the effect and validity of the bequest over to Joseph Amidie Lefebre.   The question is whether, the trustees being substituted for the town of Concord and holding the property devised as trustees in fee simple and on the express condition that they shall hold and apply the said property to a charitable purpose and with no power of sale by said town (trustees) during the term of ninety-nine years, a sale of a portion thereof under the authority of the court is a failure to faithfully comply with said terms and conditions, and if so, is the gift over to Joseph valid and thereby their estate forfeited and the trust ended.   We think it is very clear that the trust would not be ended by such a sale,— a conclusion that can be satisfactorily reached on several grounds.   It is sufficient for the present to say that the gift over to Joseph is void as contrary to the rule against perpetuities.   The event upon which the gift to him is to take effect is the failure of the trustees to faithfully comply with said terms and conditions, an event which may never happen.   If it were to be assumed that the provisions for the preservation and application of the property are conditional limitations, upon the failure to perform any of which the testator intended the estate of the trustees should determine, rather than declarations of the trust which are enforceable under the special jurisdiction of a court of equity, and an alienation of a portion of the property under direction of the court is a failure to comply with the terms and conditions of the trust, — propositions which are clearly unfounded, — nevertheless, the gift over is in violation of the rule against remoteness and void.   For to satisfy the rule which is in force in this state, the event upon which the gift over is to take effect must of necessity, if valid, occur within the life or lives of some person or persons in being and twenty-one years and a fraction thereafter.   *Edgerly* v. *Barker*, 66 N. H. 434, 452, 462; *Wood* v. *Griffin*, 46 N. H. 230, 234; *Dennett* v. *Dennett*, 40 N. H. 498, 503; *Marston* v. *Carter*, 12 N. H. 159, 162; *Brattle-Square Church* v. *Grant*, 3 Gray 142; *Wells* v. *Heath*, 10 Gray 17; *Odell* v. *Odell*, 10 Allen 1, 7; Gray Perp., ss. 592, 593.   While if an absolute term is taken and no anterior term for a life in being is referred to, such absolute term cannot be longer than twenty-one years.   1 Per. Tr., s. 380; *Crooke* v. *De Vandes*, 9 Ves. 197;

*Palmer* v. *Holford*, 4 Russ. 403; *Speakman* v. *Speakman*, 8 Hare 180. "The number of lives in being that may be designated as a part of the period of postponement, and the power of including the lives of persons to whom no interest is given, and adding a term of twenty-one years in gross without reference to the infancy of a beneficiary, are open questions in this jurisdiction." *Edgerly* v. *Barker*, 66 N. H. 434, 461.

The present case furnishes no occasion for deciding them, or whether an additional period of nine months can be allowed without gestation (*Cadell* v. *Palmer*, 10 Bing. 140, 150); for a devise such as the present, resting only upon a contingency which may never occur, or which may not occur for ninety-nine years, as a term in gross without reference to any life in being, is clearly void upon all the authorities.

For this reason, without considering others that may be suggested, we think the gift to the trustees is not affected by the gift over to Joseph Lefebre. But the terms and conditions expressed in the will are binding upon the trustees as declarations of the trust, and they are not empowered to alien the estate or any part of it without special authorization from the court. The attorney-general having been made a party by amendment at the trial term, permission to make the sale will be granted unless the attorney-general shall desire to be heard.

*Case discharged.*

BLODGETT, J., did not sit : the others concurred.