In the year 1900, Armide V. Smith acquired a tract of about two and a half acres, situate at Oceanic, in this state, on which she erected two dwelling-houses, one of which she called "Armide Rest" and the other "Ellen Cottage," both of which she maintained as a summer vacation home for working girls, until her death, April 18th, 1907. By her will, admitted to probate by the surrogate's court of New York county, she provided, in the sixth clause thereof, as follows:
"I give, devise and bequeath to the following institutions incorporated under the laws of the State of New York the respective sums of money, or parcels of property, set opposite the name of each respective institution" (then follow five items of bequests of sums of money to five institutions and the clause continues):
"6. The Young Women's Christian Association of New York, the premises at East Oceanic, * * * and which are now known as `The Armide Rest' and `Ellen Cottage,'" upon the following conditions:
"a. That the said premises be permanently maintained as a home for working girls and working unmarried women, between the ages of sixteen and forty years.
"b. That it be maintained as a non-sectarian institution.
"c. That the names `The Armide Rest' and `Ellen Cottage' be permanently retained.
"d. That in `The Armide Rest' there be kept permanently a free bed to be known as the `Armide Bed.'
"e. That in `Ellen Cottage' there be kept permanently a free bed to be known as the `Ellen Bed.'
"It is my will that if any of the foregoing bequests lapse, or in case said `The Young Women's Christian Association of New York' shall refuse to accept said premises on said conditions, or in the event of said association being unable, for any reason, to accept the same; or in the event at any time of the failure of any one or more of said conditions, that then and in that event, the bequest or devise so lapsing, shall revert to and become part of my residuary estate." *Page 570 
The testatrix gave her residuary estate to trustees —
1. To pay the income from one-half to her sister, Mary V. Tiffany, for life, and upon her death to pay one-half of said estate to John P. Kellogg (now dead), or, if he be dead, to pay said one-half to the Domestic and Foreign Missionary Society of the Protestant Episcopal Church in the United States of America.
2. To pay the income from the other half for the use of her nephew, Rene de Fontinelliat, for life, and, upon his death, leaving issue, to pay one-half of said estate to his issue, or, if no issue, to pay said one-half to the Domestic and Foreign Missionary Society of the Protestant Episcopal Church in the United States of America.
The Young Women's Christian Association of New York accepted the devise and maintained the premises and cottages as a summer home for working girls and unmarried women from 1908 until the close of the summer of 1919, but the further maintenance of the property for the purposes being impracticable, it has not been so used since 1919. The association filed its petition in this court April 19th, 1921, setting forth the reasons why it deemed it impracticable to maintain the property for the object specified by the testatrix, showing that it owns lands and buildings at Allendale, in this state, devoted to use as a vacation home for working girls and unmarried women, open throughout the year and representing that the devise and charitable intentions of the testatrix can be effectuated if the association be permitted to sell the land and premises at Oceanic and use the proceeds either as an endowment fund to be known as the "Armide Smith Fund" in connection with its Allendale home, or use the proceeds for the erection of an additional cottage on the Allendale property. The petition prays that the land and premises at Oceanic be ordered sold free from the limitations of the trust specified in the will, and that the proceeds of sale be held upon the same or like conditions, limitations or trusts as were declared in the original trust or be devoted to some other use, not inconsistent therewith, as may be directed by this court. The petition prays process to answer directed to *Page 571 
Alva E. Belmont, surviving trustee under the will of Armide V. Smith, Mary V. Tiffany, Rene de Fontinelliat (he having had no issue up to date of final hearing of the cause), the Domestic and Foreign Missionary Society of the Protestant Episcopal Church in the United States of America and the attorney-general of the State of New Jersey. No appearance was entered and no answer was filed by the defendants Alva E. Belmont, trustee, and Rene de Fontinelliat, and a decree pro confesso was entered against them. Mary V. Tiffany filed an answer admitting the truth of the allegations contained in the petition, and consenting that the prayer of the petition be granted, upon condition that the decree of the court shall require that the proceeds of sale be used and applied in such manner that the name "Armide" shall always be retained in connection therewith. The attorney-general filed an answer alleging that it is for the best interests of the public that the trust in question be enforced by a decree of this court, and that the intention of the testatrix be carried out, and that the petition be dismissed. The Domestic and Foreign Missionary Society of the Protestant Episcopal Church in the United States of America filed an answer alleging that the will in question provides that if the petitioner is unable to comply with the conditions of the devise to it, the land and premises in question revert to the residuary estate for the benefit of the missionary society and others, and that the intention of the testatrix will best be effectuated by directing a sale and requiring the proceeds to be paid to the clerk of this court, or to a trustee to be appointed, subject to the trusts created by the will. The answer prays that the petition be denied in so far as it seeks to have the proceeds of sale held for the benefit of the petitioner, and that the court appoint a trustee to administer the fund realized from a sale, in accordance with the provisions of the will. The proofs taken and the stipulated facts show that the property is no longer adapted for the purpose which the testatrix had in mind. The cottages can be used only in the summer months because they contain no provision for heating, and they have no cellar in which heating apparatus can be installed; *Page 572 
they are not equipped for lighting by gas or electricity, and they have totally inadequate facilities for bath, lavatory and toilet purposes, and the cost of installing these lacking improvements and conveniences is prohibitive. The property is in a built-up neighborhood and its location is neither country nor seashore. It is about two miles from the ocean, which is reached either by walking or by public omnibus, and the use of the beach for bathing purposes requires the girls to hire bath houses. While the cottages were maintained by the association, the girls were charged a small sum for board, but the money thus received was insufficient to employ a proper matron, the necessary help and cover the cost of maintenance and repair. The association owns a tract of land of about five acres in the open country at Allendale, upon which it has two buildings, and which, since 1919, has been operated by the association as a place where working girls and working unmarried women may spend their vacations, holidays and week-ends. It is open throughout the year. The main house can accommodate from thirty to forty girls, and the other building contains a large hall used for dancing and entertainments, and has sleeping accommodations for twenty-five girls. Both buildings are equipped with running water and ample bathing and toilet facilities, and are lighted by electricity. The main house is heated by steam. The Saddle river is nearby and has been dammed into a swimming pool, and dressing rooms for bathers have been installed in one of the association's buildings. So popular is this place that two thousand six hundred and twenty-four girls were entertained during 1923. It is practically self-supporting and is capable of expansion, but it has no funds to expand for improvements or additions which would increase its usefulness. If such funds were available, a larger number of girls could be accommodated and given the benefits of rest and recreation which its facilities offer. The association proposes that the property at Oceanic be ordered sold and the proceeds of sale be devoted to the work at Allendale, and that in such event it will name one of its buildings "Armide Rest." It is admitted that the Oceanic property is *Page 573 
now unsuited and inadequate for the purposes to which the testatrix desired it to be devoted, and that the Allendale property is operated by the association for such purposes and is suitable and adequate therefor.
The trust declared by the testatrix was for the benefit of an indefinite number of persons, and it was her expressed purpose to make that benefit permanent. To her devise she attached certain terms, and she provided that, in the event of the failure of any one of the terms (which she called conditions), the devise should lapse and be devoted ultimately to a purpose wholly foreign to her original intention. If these terms are to be regarded as conditions, it must be as conditions subsequent, which are not favored in equity and which are to be construed strictly because they tend to destroy estates, and the leaning of this court is therefore not to hold such terms to be conditions subsequent, but rather as limitations in trust. Mackenzie v. Trustees, 67 N.J. Eq. 652.
The petitioner accepted the devise and administered the trust in strict accordance with its terms for twelve years, and until through lapse of time and changed conditions, for which it is in no way responsible, an exact compliance with such terms is impossible, and the question is whether the plan or scheme which the petitioner proposes for the further administration of the charity is such a use as will effectuate the testatrix's dominant intention and whether this court has authority to order the trust property to be devoted to a use not inconsistent with such intention.
When a gift for charitable uses can no longer be administered in exact accordance with the intention of the donor, this court has power, under its general equity jurisdiction, to direct that the gift be administered cy pres — that is, as nearly as possible in conformity with the intention of the donor.Mackenzie v. Trustees, supra; Brown v. Condit, 70 N.J. Eq. 440;Larkin v. Wikoff, 75 N.J. Eq. 462; affirmed, 77 N.J. Eq. 589.
But when there is an absolute failure of the use to which the donor directed his gift to be devoted, and the donor has directed what disposition shall, in such event, be made of his gift, this court will not direct the application *Page 574 
of the gift to another charity, as nearly as may be, according to the donor's intention. Larkin v. Wikoff, supra.
Where a testator has two objects in view, one primary or general and the other secondary or particular, and these are, literally speaking, incompatible, the secondary object must be sacrified in order that effect may be given to the general object. Where the will exhibits an intention that the donation shall be devoted to a specific charitable purpose and prescribes a particular mode or means by which the purpose shall be carried out, the failure of the mode or means, after the donation has taken effect, will not defeat the charitable purpose. The specification of the manner of doing the thing often is only directory, and the implication in such case is that the donor has intended that his purpose shall, if necessary, be effectuated in some other way. This is not substituting a different charity for the one which the donor founded and which has failed, but it is carrying out the donor's general intention by the use of means other than those specified by the donor, when the specific means have become impracticable. Mackenzie v. Trustees, supra;Brown v. Condit, supra.
It is apparent from the provisions of the will that the primary and dominant intention of the testatrix was to help working girls by providing a non-sectarian place for rest, recreation and social enjoyment, and she designated her property at Oceanic as the place at which such purpose should be effectuated, because she was using it for that purpose. It was at hand and was the most available place at the time. The location, therefore, was merely an incident. She provided that the cottages should bear certain names and that a free bed be maintained in each, the name "Armide" to be a memorial to herself and the name "Ellen" a memorial to another but undisclosed person. It can scarcely be doubted that had she foreseen the impracticability of carrying out her dominant intention at the particular location, she would have made provision for carry it out elsewhere at a more suitable place, and that she would have been willing to sacrifice her desire for a memorial bearing her name for a monument, *Page 575 
albeit unlettered, in the better and happier lives of those in whose welfare she was so deeply concerned. It may be noted that, if her gift should be held to lapse, the perpetuation of her name as a memorial to her beneficence cannot be accomplished, but if the petition can be granted, the association offers either to use the proceeds of sale as an endowment fund to be known as the "Armide Smith Fund," or to name one of its cottages at Allendale "Armide Rest."
The proposition of the petitioner is not that the devise be devoted to another or to a different use, but that it be continued for the use for which the testatrix intended it, only changing the place of the use. My conclusion is that, under the general equity powers of this court, the prayer of the petitioner can and should be granted; that for failure to do the impossible, namely, to carry on the testatrix's philanthropic design at Oceanic, when it can better be carried on at Allendale by her designated trustee or agent; the gift should not be held to lapse and thus defeat the primary intention the testatrix had in mind.
By two statutes the legislature has attempted to provide for a situation such as has arisen here. P.L. 1905 p. 287, which was in force when the testatrix died, applies to land devised to religious associations and to corporations formed for the purpose of education. Without pausing to consider whether the petitioner is an association which falls strictly within the meaning of this act, I refer to the second act. P.L. 1911 p. 76; Supp. Comp.Stat. 1308 §§ 1, 2. The act of 1911 is retroactive as well as prospective in its provisions. It provides that whenever lands shall have heretofore been devised by will to any religious, educational or charitable association upon a trust that the same shall be used for specific uses or purposes, but without power to sell or convey the same, and it shall be made to appear to the satisfaction of the chancellor that a sale of such lands will promote and benefit the trust upon which the same is held, the chancellor may order such lands to be sold by such association free from the limitations of such trust, and the proceeds shall be held upon the same or like conditions, limitations *Page 576 
or trusts as were declared in the original trust, or shall be devoted to some use not inconsistent therewith, as the chancellor shall order, and the chancellor may order such association to invest the proceeds of sale in such securities as trustees are authorized to invest trust funds, or may direct the whole of the proceeds to be invested in other more desirable lands and tenements, the same to be held by such association in the same manner and subject to the same conditions, limitations and trusts as were the lands originally devised to it.
Under this statute, as well as under the general equity powers of this court, and upon the circumstances and facts here present, the prayer of the petitioner can be granted. I shall advise a decree that the petitioner sell the land and premises at Oceanic free from the limitations of the trust contained in the will of Armide V. Smith, and I shall hear the parties now, or after such sale has been held, as to the particular disposition to be made of the proceeds of sale in connection with the property owned by the petitioner at Allendale.
Costs of the petitioner and of the answering defendants, including reasonable counsel fees, will be allowed, to be paid from the proceeds of sale.