HENSHAW *et al. v.* FLENNIKEN *et al.*

(*Knoxville,* September Term, 1945.)

Opinion filed December 1, 1945.

On Petition to Rehear January 5, 1946.

234

WALTER D. DeVAULT and R. D. JOHNSTON, both of Knoxville, for complainants.

W. CLYDE BUHL, of Knoxville, for defendants.

MR. JUSTICE NEIL delivered the opinion of the Court.

This cause originated in the Chancery Court of Knox County upon a bill filed by the Trustees of the Immanuel Baptist Church against the heirs of Robert G. Flenniken, in which complainants sought a decree holding void a

restraint on the alienation of certain lands devised to the trustees of said church. That part of the testator's will which is claimed to be void on the ground that it creates a perpetuity is as follows:

"Section 2. I give and bequeath to my wife Harriett A. Flenniken, all of my property of every kind and character, real, personal and mixed, during her natural life, and at her death I direct that the title to all my lands with all the appurtenances thereto, be and vest in the Trustees of Immanuel Baptist Church, at Vestal, Knox County, Tennessee, but said lands shall not be sold or title parted with by said Trustees of said Immanuel Baptist Church, but said lands to be kept and rented or leased and the profits thereof to be used in furthering the work of said Church, in paying the expenses of said Church, and in raising funds for Foreign, Home and State Missions for the Missionary Baptist Church."

The lands herein devised consist of about twenty-one acres and lie within the corporate limits of the City of Knoxville. The bill alleges that the complainants, trustees of the church, have had no funds to develop and improve the property and that it is to the advantage of the church to sell said lands and that the proceeds should be used by the church "in furthering the work of the church, in paying the expenses of said church, and in raising funds for foreign, home, and state missions for the Missionary Baptist Church." The complainants allege that the testator devised the property for the foregoing purposes. It is contended that the restrictive clause in the will against the sale of the land is a mere directive provision and void because constituting a restraint on alienation.

The reasons advanced by complainants for desiring to sell the property in question are found in the following averments of the bill, which are conceded to be true:

"Said land have thereon nine houses, all of which are very small and cheaply constructed except two, and all are in bad state of repair.; that the expenses of making repairs would not be justified, even if the complainants had the money. Complainants and their predecessors in interest have rented. the houses the best they could and paid the taxes. The gross income during the past three years has averaged about $725.00 and the taxes and expenses have been about $325.00, leaving a net yearly income of only $400.00."

It is averred that when the present demand for housing space is past the income from the property will be greatly reduced; that complainants do not have the necessary funds to repair and improve the property so as to increase their rental value. Complainants say that the officers and members of said Immanuel Baptist Church have planned and hoped to erect a new and larger church building on other property and it would be greatly to the advantage of all to sell the lands in question and use the proceeds "for the construction of a new and suitable building for their church, Sunday School, and other religious and missionary purposes." It is averred that they have received an offer of $10,000 from J. S. Cameron of Knoxville for the property, provided he can get a good title to it, and he had made a deposit of $1,000 as evidence of his good faith in the matter, and that the members have agreed to accept the offer if the courts should authorize the sale.

The bill prayed in the alternative that, if mistaken in the view that the restriction in the will is void, the court decree that "it is manifestly for the interest of complain-

ants and the said church that they be excused from the direction of the devisor not to sell the property and that they be authorized to sell,'' etc. The foregoing prayer for alternative leave is based upon the averment that ''conditions have greatly changed since the will was made, which changes the deceased could not foresee; and because of the fact that the church and complainants, its trustees, cannot afford to spend the money necessary to properly develop and improve the property and make it profitable; that the proceeds of sale can be used to a better advantage in furthering the interest of the church in paying expenses and in raising funds for foreign, home, and state missions,'' etc., all of which ''was the intention and purpose of Robert G. Flenniken in making the devise of said lands.''

It appears that a *pro confesso* was taken against a number of the defendants who had been served with process. Other defendants demurred to the bill upon the following grounds:

''(1) That the bill shows on its face that the complainants have no interest in the property which can be sold.

''(2) That the bill shows on its face that the complainants are attempting to dispose of the property in a manner which is lawfully prohibited in the will under which complainants claim title.

''(3) That the restraint of alienation contained in the will is one which can lawfully be made as to property given to a church or other charitable body.

''(4) That all the parties in interest are not made parties to the suit and that there are not such parties as are necessary to give the court jurisdiction in this cause.

''(5) That the bill sets out no facts giving complainants any ground for relief as against these defendants.''

It is conceded by all parties that the testator created a valid charitable trust. No question is made as to its validity and all our cases dealing with the question of such trusts need not be referred to or considered. It cannot be doubted but that the trustees of the church took title to the lands here involved immediately upon the death of the testator and their acceptance of the trust. No question is made but that they have administered it in accordance with his desires as expressed in the will.

Under the assignments of error there are two questions presented which are determinative of the case: (1) Does the restraint upon the sale and transfer of title to this property create a perpetuity that is forbidden by law? (2) Has a court of equity, in the exercise of its inherent jurisdiction, authority to authorize the sale of said lands on the ground that under the facts and circumstances it is for the best interest of all parties and would more effectively contribute toward carrying out the real wishes of the devisor?

The chancellor in a brief memorandum opinion said: "The demurrer should be sustained for the reason that this will giving all of said property to the church created a charitable or religious trust recognized under our law and that the testator had a lawful right to provide that said property should not be alienated."

█ █ We readily agree with the learned chancellor that the testator had the right to thus place a total restraint upon the right of alienation, but this fails to solve the difficulty confronting the trustees of the church, who are desirous of selling the property for the reasons stated in the bill and which are conceded to be true. It cannot be doubted that a similar restriction in a conveyance or devise to an individual, or in trust for purposes not of a

charitable nature, would be illegal. And where it is a condition subsequent, the beneficiary would take title free from all restraint against alienation. But does the same rule apply to devises of property in trust for a charitable or public use? In II Perry on Trusts and Trustees, sec. 737, 7th Ed., it is said:

"A perpetual trust cannot be created for an individual and his heirs in succession forever; and herein a charity differs, for a trust may be established which contemplates the payment of the income of a certain fund to some charitable purpose forever. Indeed, it is always hoped, where funds are given in trust, the income to be applied to some church, almshouse, hospital, or school, that such institution will exist indefinitely, and that the donor's bounty will be a perennial spring for generations. At the same time, it is to be observed that this rule, applied to charities, does not render any particular property inalienable; for the court can decree the sale of any trust property when an exigency arises, and even the soil upon which a church, hospital, almshouse, or schoolhouse is built, can be sold by a decree in equity, when it is desirable to remove from that particular place to another."

We think under the foregoing authority and the numerous cases cited in support of it that, where there is a devise of land in trust for charitable purposes, coupled with an express restraint against sale and passing title, such lands must be considered inalienable by the trustees. While the trustees are without power, to sell, due to the express limitation in the instrument creating the trust, there is abundant authority to sustain the power of the chancery court to order a sale of such property, as where it will clearly sustain the general purpose and intention of the devisor rather than nullify or

impair it. *Franklin* v. *Armfield*, 34 Tenn. 305; 14 C. J. S., Charities, sec. 48, p. 505.

In Scott on Trusts, vol. 3, sec. 381, the author says:

"The power of a court of equity to permit or direct a deviation from the terms of the trust is at least as extensive in the case of charitable trusts as it is in the case of private trusts. The courts will direct or permit a deviation from the terms of the trust where compliance is impossible or illegal, or where owing to circumstances not known to the settlor and not anticipated by him compliance would defeat or substantially impair the accomplishment of the purposes of the trust. Thus it has been held in numerous cases that the court may authorize the sale of property although such sale is not authorized or is forbidden by the terms of the trust."

A number of cases are cited in support of the foregoing text.

In *Rolfe & Rumford Asylum* v. *Lefebre*, 69 N. H. 238, 45 A. 1087, 1088, it was held that a direction in a gift for a charitable trust that the real estate devised should not be alienated for ninety-nine years was not void as a perpetuity. In the same case, however, it was ruled that a sale might be effected by and through the jurisdiction of the chancery court. Mr. Justice PARSONS in deciding the question said:

"A condition that the trustees of a charitable trust shall not alienate the land which is the property of the trust will not prevent a court of chancery from permitting, in case of necessity arising from unforseen circumstances, the sale of the land and the application of the proceeds to the purposes of the trust. *Jones* v. *Habersham,* 107 U. S. 174, 183, 2 S. Ct. 336, 27 L. Ed. 401; *Ould* v. [*Washington*] *Hospital,* 95 U. S. 303, 24 L. Ed. 450."

Counsel have cited many cases where the court has dealt with the right of trustees to encroach upon the *corpus* of a trust estate (a private trust) for the benefit of the *cestui que trust*. These cases have no application here except by way of analogy. It is very clear that in a number of these cases the chancery court authorized a deviation from the trust in aid of the beneficiary upon the theory of "imputed intention" of the settlor or donor. In other words, it was considered that had the testator or settlor been able to foresee the changed conditions of the *cestui que* trust he would have given his consent to a diversion of the trust fund. *Bennett* v. *Nashville Trust Co.,* 127 Tenn. 126, 153 S. W. 840, 46 L. R. A. (N. S.) 43, Ann. Cas. 1914A, 1045; *Weakley* v. *Barrow et al.,* 137 Tenn. 224, 192 S. W. 927. The principle in these cases was also applied in *Cowan* v. *Hamilton National Bank,* 177 Tenn. 94, 106, 146 S. W. (2d) 359.

██ Counsel for appellants seem to think the Court has applied the rule of *cy pres* in these and other cases and that we should do so in the instant case. In making this contention they are in error. This state has never recognized the rule. In fact, it has been repudiated expressly. In holding that a court of equity may order a sale of property held for a charitable use, the intention of the devisor is held to be of paramount importance. There is no authority in the laws of this state for a court of equity to divert trust funds, devised and bequeathed for a legal purpose, to some other lawful purpose than that named by the testator under the *cy pres* rule.

In *Weakley* v. *Barrow, supra,* 137 Tenn. page 233, 192 S. W. 927, 929, the action of the Court in ordering a sale of trust property rested its authority upon the inherent jurisdiction of the chancery court, and not upon the doc-

trine, of *cy pres,* which is a rule of construction. Mr. Justice WILLIAMS, speaking for the Court, said:

''The exercise of the power depends, not on expediency, but on exigency. When considerations of necessity, which rise to the dignity of an exigency or emergency, make their appeal to a court of equity, its power to modify the terms of the trust and bring to sale property withheld from sale in terms (at least where the trust is created by deed) is exercised, not to defeat the trust, but in furtherance of the trustor's purposes towards his beneficiaries, by affording relief from after-arising conditions that would defeat his purposed bounty. The court, even then, proceeds with great caution, and should hold as nearly as may be to the mode of management set forth by the trust-creator.''

There can be no doubt but that the testator, Robert G. Flenniken, was devoted to his church; that he had in mind its future welfare, the preaching of Christianity at home and abroad. When he made his will there was no attempt to allocate the income or any part of it to different church purposes, but his thought was to aid this church in all its varied activities. There is nothing said in the will about the property reverting to his estate or a gift over in the event the trustees violated the trust. He had the utmost confidence in them and that they would carry out his wishes. It appears, however, he failed to consider the cost of keeping the property in repair, that, the trustees not having funds to improve it, it would deteriorate and be of little value to the church. Under the averments of the bill the property has approximately no rental value at the present time, less than $50 a year for each house not counting the expense of collecting the rent. It does have a sale value of $10,000. Considering the changed conditions as they are shown to exist today,

it could not possibly be his wish that the church hold the property until it has no rental value at all, or is lost entirely at a tax sale. This is within the realm of probabilities.

We think the learned chancellor was in error in dismissing complainant's bill for the reasons stated in this opinion. The cause is therefore reversed and remanded to the end that the court may hear proof, if necessary, and determine if it is for the best interest of all parties that the sale of the property in question be made upon such terms as the chancery court may direct, or the present offer of Cameron be accepted, and direct the execution of a deed by the trustees to the purchaser.

The defendants will pay the costs of the appeal.

### On Petition to Rehear.

The defendants, appellees, have petitioned the Court for a rehearing, complaining that it was error (1) to order the sale of the *corpus* of a charitable trust and invest the proceeds in a new church edifice, and (2) that they should not be taxed with the cost of the appeal.

The only question we have decided thus far is that a court of equity, in the exercise of its inherent jurisdiction, could direct the sale of property (the *corpus* of a charitable trust) where it is for the best interest of all parties, the sale being highly desirable because of changes which the testator could not reasonably foresee.

The trustees have apparently construed our opinion to mean that the proceeds of said sale may be used to build a new church. The petitioners from the beginning have challenged this right, although they have no interest in the property, contending that it violates the testator's intention and operates to change the character of the trust. This exact question has not been decided.

We deem it unnecessary to review the authorities touching the right of the Court to order a sale of the property. In addition to many cases from other jurisdictions cited in the opinion, we have our own case of *King College* v. *Anderson*, 148 Tenn. 328, 255 S. W. 374, to the effect that the Court may direct the sale of lands, which constitute the *corpus* of a charitable trust, and reinvest in other lands, resulting in a change of location of the college. In that case the Court kept in mind the intention of the donor (as is our plain duty in the instant case) and speaking through Mr. Justice CHAMBLISS said:

"The sale now being made so clearly comes within the evident thought and purpose of the grantor as expressed in the concluding lines of this paragraph—that is, 'for the more successful and convenient prosecution of the objects of this conveyance' that we feel justified in giving a liberal construction to the paragraph as a whole, thereby carrying out that which all must concede would be the desire of the grantor if he were himself in position to speak." Pages 335, 336 of 148 Tenn., page 376 of 255 S. W.

We cannot by any known rule of construction construe a declaration of trust, whether made by deed or will, that will thwart the will of the donor. An examination of the testator's will clearly shows that his one great desire was to give financial aid to his church. It is true he provided that the lands devised "should not be sold" and that the income be used to support the church. A sale of the lands, however, and investment of the proceeds in a church house, would not in any real sense be a departure from the testator's wishes. The use of the money to build a church may be necessary for its very existence and, if the need is imperative, or highly desirable, we think the application of the proceeds of this

sale to such a purpose gives every consideration to the wishes of the testator as expressed in his will. He certainly would not want the church that was evidently near and dear to his heart to fail in its purpose for lack of a suitable house of worship. Moreover, there is no diversion of the *corpus* of the trust estate in holding that it may thus be converted. The money derived from the sale of the land is impressed with the trust as well as the new church building, which is held in trust by the same trustees for use as a house of worship by present and all succeeding members thereof.

 It appears from the allegations in complainants' bill, which are taken as true, that there is a strong probability that the property in question may be entirely lost to the church because of a lack of sufficient funds to pay taxes, insurance, and keep the buildings in proper repair. The primary reason for sustaining the bill was to save the property from loss and thus preserve the trust. In 14 C. J. S., Charities, sec. 50, p. 511, it is said:

"It is a natural and necessary branch of the jurisdiction over charitable trusts that the means or details prescribed for their administration should be subject to be molded so as to meet any exigency which may be disclosed by a change of circumstances, and to relieve the trust from a condition which imperils or endangers the charity itself or the funds provided for its endowment and maintenance."

The Supreme Court of Alabama dealt with this question in *Lovelace* v. *Marion Institute*, 215 Ala. 271, 110 So. 381, wherein the trustees of a charitable trust sought the approval of the chancery court to mortgage the *corpus* of a trust, contrary to the expressed intention of the donor. In sustaining the bill the court repudiated the "*Cy pres*" doctrine and rested its decision upon the inherent juris-

diction of a court of chancery, citing with approval the above text from 14 C. J. S., Charities, sec. 50, p. 511.

Another interesting case found in a footnote to the text is *In re Y. W. C. A. of New York City*, 96 N. J. Eq. 568, 126 A. 610, 613, in which it was held that under the statute of New Jersey, N. J. S. A., 15:14-7 *"as well as under the general equity powers,"* the "Chancellor is authorized to order that lands conveyed to a religious, educational, or charitable association be sold, *when a sale will promote or benefit the trust*. Such sale may be made free from the limitations of the trust, and the trust will thereupon attach·to the proceeds of sale." (See syllabus. Italics ours.) In thus construing the will the court considered the dominant intention of the testator, saying that, "had she foreseen the impracticability of carrying out her dominant intention at the particular location, she would have made provision for carrying it out elsewhere at a more suitable place." Page 612 of 126 A.

■■■ Responding further to the contention that petitioners should not be onerated with the cost of the appeal and that their counsel should be paid out of the proceeds of the sale of the land, we think it clearly appears that they have no vested interest in the lands in question for the reasons stated in this opinion. Moreover, by no stretch of the imagination can it be said that their counsel contributed any benefit whatever to the trust estate in this proceeding. The case of *Carmack* v. *Fidelity-Bankers Trust Co.*, 180 Tenn. 571, 177 S. W. (2d) 351, has no application.

Since there was no provision in the will for a reversion of the property to the petitioners or a gift over for breach of trust, there was no occasion for employment of counsel to resist the efforts of the trustees to have a declaratory decree construing the will.

The petition is accordingly denied.