# IN THE COURT OF APPEALS OF TENNESSEE
# AT KNOXVILLE
September 12, 2017 Session

## BOBBY REED v. WILLIE KATE REED ET AL.

Appeal from the Chancery Court for Greene County
No. 20140158     Douglas T. Jenkins, Chancellor

_____

No. E2017-00273-COA-R3-CV

_____

This appeal involves the interpretation and construction of a trust agreement. John Marion Reed and his wife Willie Kate Reed, in the process of their estate planning, executed a revocable living trust agreement. They conveyed approximately 204.61 acres of real property to the trust. Shortly thereafter, Mr. Reed died testate. The trust was the sole residual beneficiary of his will. Mrs. Reed, the successor trustee, distributed all of the real estate in the trust to herself by way of a quitclaim deed. She then terminated the trust. Bobby Reed, her son and a beneficiary of the trust, filed this action alleging that Mrs. Reed exceeded her authority under the terms of the trust agreement. He asked the trial court to order an accounting of the assets of the trust that had been distributed by Mrs. Reed since her husband's death. He sought the return to the trust of the assets wrongfully distributed. The trial court held that Mrs. Reed did not have the authority to transfer all of the real estate in the trust. Accordingly, the court voided the quitclaim deed, and granted the requested relief of Bobby Reed. We affirm the trial court's judgment.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and THOMAS R. FRIERSON, II, J., joined.

Cheryl E. LaNasa and Mark W. McFall, Johnson City, Tennessee, for the appellant, Willie Kate Reed, Executrix of the Estate of John Marion Reed and Trustee of the John Marion Reed and Willie Kate Reed Living Trust, and Cindy Kinley.

Jerry W. Laughlin, Greeneville, Tennessee, for the appellee, Bobby Reed.

1

# OPINION

## I.

The Reeds executed the trust agreement on November 15, 2000. Mr. Reed executed his will the same day. On January 3, 2001, the Reeds conveyed a total of approximately 204.61 acres of real estate to the trust by four quitclaim deeds. Two of the deeds were executed jointly. Mr. and Mrs. Reed each executed one deed separately. Mr. Reed died on May 27, 2001. His will designates Mrs. Reed as executor and further provides in pertinent part as follows:

> I give any interest I have in all personal automobiles, clothing, jewelry, china, silver, books, pictures, and other works of art, household furniture and furnishings and all other items of domestic, household or personal use to wife, if she survives me.
>
> *       *       *
>
> All the rest, residue and remainder of my estate, both real and personal, . . . including all of my separate property, if any, and my share of the jointly held property of my wife and myself, I give, devise and bequeath to the individual or bank then acting as Trustee under the certain Trust Agreement designated as The John Marion Reed and Willie Kate Reed Trust, signed earlier this day and bearing the same date as this Last Will and Testament, of which my wife and I are Co-Trustors and Co-Trustees, to be combined with the other assets of the trust and held, administered and distributed as a part of that trust, according to the terms thereof and any amendments made to it prior to my death.

On March 27, 2002, Mrs. Reed, purporting to act in her capacity as executor, transferred an additional 76 acres of real estate to the trust. A week later, she conveyed all of the real property held by the trust to herself individually. She then terminated the trust.

Plaintiff brought this action on December 5, 2014, alleging that Mrs. Reed "wrongfully, and without authority, conveyed to herself all of the real estate in [the] Trust, worth hundreds of thousands of dollars." Also named as a defendant was Cindy Kinley, his sister and holder of a power of attorney for Mrs. Reed. He further alleged that

2

> [t]he Plaintiff, as one of the vested remainder beneficiaries of the Trust . . . is entitled to an accounting of the disposition of the assets of John Marion Reed at the time of his death as well as the assets then in The John Marion Reed and Willie Kate Reed Living Trust, and to the return to said Trust of any assets that have been wrongfully removed from said Trust by the Defendant Trustee, or her power of attorney[.]

Mrs. Reed answered, arguing that the trust agreement provided her the authority to undertake the challenged actions.

A trial took place on December 14, 2016. The parties entered eleven stipulated exhibits at the beginning of the hearing. These exhibits, the parties' affidavits, and their discovery answers provided the framework of the undisputed facts in the case. At trial, plaintiff's counsel began his opening statement. The trial court asked several questions regarding the terms of the trust agreement. Following this, the court said, "I don't think we need any proof . . . I don't think she can do it as a matter of law." The court entered an order holding that the quitclaim deed from Mrs. Reed, in her capacity as trustee, to herself individually "was executed without authority by the Trustee under the terms of the said Trust, and consequently is void and should be set aside." The trial court further ordered Mrs. Reed to "provide to the Plaintiff a written accounting for any and all personal property of the Trust that she has distributed to anyone since the date of the death of John Marion Reed." Mrs. Reed timely filed a notice of appeal.

## II.

The issues presented are as follows:[1]

> 1. Whether the trial court denied the defendants due process of law by failing to conduct a full evidentiary hearing.

---

[1] Before the trial court and in her appellate brief, Mrs. Reed challenged plaintiff's standing to bring this action. However, at oral argument, her counsel conceded plaintiff's standing. Mrs. Reed included in her statement of issues the issue of whether the trial court erred in ordering her to provide plaintiff an accounting for personal property she distributed as trustee. The sole sentence in her brief touching upon this issue states, "Plaintiff's rights to a remainder interest are therefore contingent, and he has no vested, present right to an accounting of the Trust." Mrs. Reed has waived this issue by including no argument, citation to the record, or citation to legal authority supporting her contention that the trial court erred by ordering an accounting. *Newcomb v. Kohler Co.*, 222 S.W.3d 368, 401 (Tenn. Ct. App. 2006) ("The failure of a party to cite to any authority or to construct an argument regarding his position on appeal constitutes waiver of that issue.").

2. Whether the trial court erred in concluding that Mrs. Reed lacked the authority under the trust agreement to divest the entire principal of the trust by quitclaim deed to herself individually.

## III.

"The interpretation of a trust instrument is a question of law for the court" that we review de novo, with no presumption of correctness. *Holder v. First Tenn. Bank N.A. Memphis*, No. W1998-00890-COA-R3-CV, 2000 WL 349727, at *3 (Tenn. Ct. App., filed Mar. 31, 2000). There are no disputed issues of fact on this appeal.

## IV.

Mrs. Reed contends on appeal that she was denied due process by the trial court's ruling that no further proof was needed for the court to determine that plaintiff, as a matter of law, was entitled to the relief requested. Mrs. Reed, however, failed to object to the ruling or to raise this issue at the trial level. Consequently, this issue is waived. *City of Cookeville ex rel. Cookeville Regional Med. Ctr. v. Humphrey*, 126 S.W.3d 897, 905-06 (Tenn. 2004) ("As a general rule, questions not raised in the trial court will not be entertained on appeal"), quoting *Lawrence v. Stanford*, 655 S.W.2d 927, 929 (Tenn. 1983) (internal quotation marks omitted). The only issue that is properly before us is issue number two in Mrs. Reed's brief.

We construe and interpret a trust agreement in accordance with well-established principles:

> Trust instruments are interpreted similarly to contracts, deeds, or wills. *Marks v. Southern Trust Co.*, 203 Tenn. 200, 205, 310 S.W.2d 435, 437–38 (1958). Determining the settlor's intent is important and may be easily done by looking to the four corners of the trust instrument. *Marks*[,] 310 S.W.2d at 438.

*In re Estate of Marks*, 187 S.W.3d 21, 28 (Tenn. Ct. App. 2005). As we further observed in *Holder*,

> The trust must be interpreted so as not to frustrate the intent of the grantor. *See* *Henshaw v. Flenniken*, 191 S.W.2d 541, 546 (Tenn. 1945). Though one clause may contradict or be

4

> inconsistent with another clause within the trust, the court must adhere to and give effect to the intention of the grantor to determine which clause will prevail. *See Marks*, 310 S.W.2d at 438. The grantor's intention is to be ascertained from the particular words used, from the context and from the general scope and purpose of the instrument. *See Daugherty v. Daugherty*, 784 S.W.2d 650, 653 (Tenn. 1990).

2000 WL 349727, at *3.

The trust agreement before us provides that, upon the death of one spouse, the surviving spouse will be designated as the trustee and "shall divide the trust estate of the Deceased Spouse . . . into two (2) separate trusts, as designated TRUST A and TRUST B." (Capitalizations in original.) The agreement further provides as follows regarding Trust A and Trust B:

> 1. TRUST B Assets. There shall be placed in TRUST B that amount of the Deceased Spouse's interest in the community, quasi-community and separate property included in the trust estate which, after taking in to [sic] account all allowable deductions and all allowable credits, other than the unified credit against federal estate tax, equals the exemption equivalent of the unified credit against federal estate tax . . . . If the Deceased Spouse's said interest in the trust estate is less than such equivalent exemption amount, the Deceased Spouse's entire said interest shall be placed in TRUST B. The assets placed in TRUST B shall not be subject to an election to be treated as qualified terminable interest property and no person shall have any power to make such an election.

> 2. Trustee Assets. There shall be placed in TRUST A the balance, if any, of the Deceased Spouse's interest in his or her separate and joint property included in the Trust Estate.

Mrs. Reed allocated all of the trust's assets into Trust B. Trust A was never funded.

The trust agreement further provides, under the heading "irrevocable provisions," the following:

> Upon the death of either John Marion Reed and Willie Kate Reed, the first Co-Trustor to die, . . . the then surviving Co-

5

Trustor, hereinafter called "Surviving Spouse," with respect to the property of the Deceased Spouse, shall have the power to amend, revoke and/or terminate TRUST A (the marital deduction Trust) only, and *TRUST B* (the exemption equivalent Trust), hereinafter established, *may not be altered, revoked or terminated*.

(Emphasis added.)

The trust agreement provides certain rights and privileges to the trustee. For instance, it states that "[a]t any time, even after the death of one Co-Trustor, [the] Co-Trustee may withdraw his or her separate property, including his or her share of jointly held property, without the consent or concern or concurrence of the other Co-Trustor." The agreement also allows the trustee to invade the principal of the trust in certain amounts and under certain conditions, providing as follows:

1. Distribution of Income. On the death of the Deceased Spouse, the Trustee shall pay to or apply for the benefit of the Surviving Spouse the net income of TRUST B in quarter-annual or more frequent intervals.

2. Invasion of Principal.

(a) *In the event of any illness* affecting the Surviving Spouse, *or if such Surviving Spouse should be in need of funds for support* in the standard of living to which he or she is accustomed at the date of the death of the Deceased Spouse, *and if the income of this trust shall be deemed insufficient by the Trustee to provide for such reasonable health, support and maintenance* as set forth herein, the Trustee may, as often as it deems necessary, pay to or apply for the use and benefit of such Surviving Spouse such part of the principal of TRUST B, up to and including the whole thereof, as is necessary to provide for such reasonable health, support and maintenance.

(b) Additionally, the Trustee may pay to the Surviving Spouse such part of the principal of TRUST B as such Surviving Spouse shall request in writing from time to time; provided, however, that the amount distributed to such Surviving Spouse during a calendar year shall not exceed the

greater of Five Thousand Dollars ($5,000.00) or Five Percent (5%) of the value of the trust, and such right of withdrawal shall not be cumulative, but shall lapse at the end of each calendar year not so exercised.

(Emphasis added.) Mrs. Reed has consistently *cited* and referenced section 2(a) above in support of her argument that she had the authority to distribute all of the real property in the trust to herself, but she never *alleged* or stated that she had an illness or that her income was insufficient to provide for her reasonable health, support and maintenance. She was well aware that this was a potential issue, and had numerous opportunities to allege these facts, including in her answer, responses to discovery requests, and affidavit. She did not. The trial court's finding that "the Defendants have not asserted that Willie Kate Reed was unable to maintain the standard of living to which she was accustomed from the income of the Trust and the other sources of income available to her" is correct and fully supported by the record.

Regarding section 2(b) quoted above, Mrs. Reed argues that because she had the authority to draw down the principal of the trust at the rate of 5% per year, she could have eventually taken the entire principal over time, and therefore she was authorized to do it all at once. We disagree. The agreement expressly precludes her from distributing to herself more than $5,000 or 5% of the value of the trust per year, which is exactly what she did in this case. This argument is without merit.

There is no other provision in the trust agreement giving the trustee authority to distribute the entire principal of the trust to herself, all at once. We affirm the trial court's construction of the trust agreement and its decision to void the quitclaim deed from the trustee to herself individually. We do so without prejudice to Mrs. Reed's continuing ability to exercise her rights as trustee to distribute the assets of the trust but only if she does so in accordance with the terms of the trust.

### V.

The judgment of the trial court is affirmed. Costs on appeal are assessed to the appellants, Willie Kate Reed and Cindy Kinley. This case is remanded to the trial court for further proceedings consistent with the edicts of this opinion.

_____
CHARLES D. SUSANO, JR., JUDGE

7